

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LONGVIEW POWER, LLC, *et al.*[1] | ) | Case No. 13-12211 (BLS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Re: Docket No. 392** |
| | ) | |

---

### FINAL ORDER (A) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED POSTPETITION FINANCING, (B) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (C) GRANTING ADEQUATE PROTECTION TO THE ADEQUATE PROTECTION PARTIES, AND (D) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"):

(I)    authorizing the Debtors to obtain senior secured postpetition financing consisting of (a) up to $150 million in the form of a multiple delayed draw term loan (the "Term Loan"), including a letter of credit subfacility in an amount not to exceed $30 million (the "Letter of Credit Facility" and, together with the Term Loan, the "DIP Financing Loans") subject to and

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: (a) Longview Power, LLC (1860); and Longview Intermediate Holdings C, LLC (1008) (collectively, the "Longview Debtors"); and (b) Mepco Holdings, LLC (6654); Mepco Intermediate Holdings A, LLC (0502); Mepco Intermediate Holdings, LLC (4248); Mepco, LLC (3172); Coresco, LLC (6397); Dana Mining Company of Pennsylvania, LLC (8721); Dana Mining Company, LLC (4499); Mepco Conveyor, LLC (0477); Shannopin Materials LLC (1616); Border Energy, LLC (2798); and Alternate Energy, LLC (2428) (the foregoing excluding the Longview Debtors, collectively, the "Mepco Debtors"). The Longview Debtors' principal offices are located at 966 Crafts Run Road, Maidsville, West Virginia 26541. The Mepco Debtors' principal offices are located at 308 Dents Run Road, Morgantown, West Virginia 26501.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

pursuant to the terms and conditions set forth in this Final Order and the *Senior Secured Superpriority Debtor-In-Possession Credit Agreement* dated [_____] (substantially in the form annexed hereto as <u>Exhibit A</u>, and as hereafter amended, supplemented, or otherwise modified from time to time, the "<u>DIP Financing Agreement</u>" and, together with all agreements, documents, and instruments executed and delivered in connection therewith, as hereafter amended, supplemented, or otherwise modified from time to time in accordance with this Order, the "<u>DIP Financing Documents</u>"), among Longview Power, LLC, as borrower (the "<u>Borrower</u>"), Longview Intermediate Holdings C, LLC ("<u>Holdings</u>"), and the Borrower's subsidiaries as set forth on Schedule 1.01(f) to the DIP Financing Agreement (together with Holdings, the "<u>Guarantors</u>"), The Bank of Nova Scotia ("<u>BNS</u>"), as administrative agent (in such capacity, the "<u>DIP Financing Agent</u>"), the lenders to the Term Loan (the "<u>DIP Term Lenders</u>") and the lenders to the Letter of Credit Facility (together, with the DIP Term Lenders, the "<u>DIP Financing Lenders</u>");

(II)   authorizing the Debtors to execute and deliver the DIP Financing Agreement and the other DIP Financing Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(III)   authorizing the Debtors to (a) use Cash Collateral (as defined herein) to the extent required herein, and (b) provide adequate protection to the

2

Adequate Protection Parties (as defined herein), including the Prepetition Secured Parties (as defined herein) under (i) the Credit Agreement, dated as of February 28, 2007, as amended by the First Amendment thereto, dated June 20, 2011, and the Second Amendment (as defined herein) (as otherwise amended, restated, supplemented or otherwise modified, the "Prepetition Credit Agreement"; and together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented, or otherwise modified, the "Prepetition Loan Documents"), among the Borrower, Holdings, the lenders from time to time party thereto, (collectively, the "Prepetition Lenders"), Citicorp North America, Inc., as administrative agent (the "Prepetition Administrative Agent"), and (ii) the J. Aron Swap Agreements (as defined herein), on account of the Debtors' use of Cash Collateral and any diminution in value of the Adequate Protection Parties' respective interests in the Prepetition Collateral (as defined herein) as of the Petition Date (as defined herein) as a result of such use of Cash Collateral and the Debtors' incurrence of the debt under the DIP Financing Agreement;

(IV)    authorizing the DIP Financing Agent, Union Bank, N.A., as collateral agent under the DIP Financing Agreement and the DIP Financing Documents (in such capacity, the "DIP Collateral Agent," and together with the DIP Financing Agent, the "DIP Financing Agents"), and the DIP

Financing Lenders to exercise remedies under the DIP Financing Documents upon the occurrence and during the continuance of an Event of Default (as defined in the DIP Financing Agreement);

(V)     authorizing the Debtors to grant liens to the DIP Financing Lenders and the Prepetition Secured Parties on the Avoidance Actions (as defined herein);

(VI)    waiving the Debtors' right to surcharge against the DIP Financing Collateral (as defined herein) or the Prepetition Collateral (as defined herein) pursuant to section 506(c) of title 11 of the United States Code (the "Bankruptcy Code");

(VII)   modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of this Final Order;

(VIII)  waiving any applicable stay with respect to the effectiveness and enforceability of this Final Order (including a waiver pursuant to rule 6004(h) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"); and

(IX)    authorizing the Debtors to terminate the Synthetic L/C Facility (as defined herein) so as (i) to permit cash held in the Synthetic L/C Deposit Account (as defined herein) in excess of Synthetic L/C Exposure (as defined herein) to be returned to the Prepetition Lenders in accordance with the terms of the Prepetition Credit Agreement and (ii) to permit cash

4

otherwise collateralizing Synthetic Letters of Credit (as defined herein) to be returned to the Prepetition Lenders in accordance with the terms of the Prepetition Credit Agreement as such Synthetic Letters of Credit are reissued or replaced with letters of credit issued under the Letter of Credit Facility.

The final hearing (the "Final Hearing") for this Court to consider entry of this Final Order granting the relief requested in the Motion having been held by this Court on November 21, 2013; and upon the record made by the Debtors at the Final Hearing (including, without limitation, (a) the *Declaration of Tyler Cowan in Support of Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Obtain Senior Secured Postpetition Financing on a Priming Basis, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Adequate Protection to the Adequate Protection Parties, and (IV) Granting Related Relief* [Docket No. 409 - filed November 12, 2013] (portions of which were filed under seal pursuant to the relief requested by the *Debtors' Motion for Entry of an Order Authorizing the Debtors to file Under Seal Portions of the Declaration of Tyler Cowan in Support of Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Obtain Postpetition Financing on a Priming Basis, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Adequate Protection to the Adequate Protection Parties, and (IV) Granting Related Relief* [Docket No. 407 - filed November 12, 2013]); and (b) the Lazard Expert Report and the Business Plan Materials, each as defined in and filed under seal pursuant to the relief requested by the *Debtors' Motion for Entry of an Order Authorizing the Debtors to File Under Seal Additional Materials in Support of Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Obtain Postpetition*

*Financing on a Priming Basis, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Adequate Protection to the Adequate Protection Parties, and (IV) Granting Related Relief*

[Docket No. 478 - filed November 18, 2013]); and this Court having heard and resolved or overruled all objections to the relief requested in the Motion; and it appearing that the relief requested on a final basis in the Motion is in the best interests of the Debtors, their estates and creditors; and after due deliberation and consideration and sufficient cause appearing therefor,

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *The Motion.*  The Motion is granted on a final basis as set forth herein.  Any objection to the Motion to the extent not withdrawn or resolved is hereby overruled.

2.    *Jurisdiction.*  This Court has core jurisdiction over the above-captioned chapter 11 cases commenced on August 30, 2013 (the "Petition Date"), the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    *Creditors' Committee Not Formed.*  A meeting to form a statutory committee of unsecured creditors in the Cases occurred on September 11, 2013.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed a creditors' committee of unsecured creditors (any such committee, a "Creditors' Committee") to date.

4.    *Notice.*  The Debtors have caused notice of the Motion, the relief requested therein, and the Final Hearing to be served by facsimile, email, overnight courier or hand delivery, on:  (a) the U.S. Trustee; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Prepetition Administrative Agent; (d) counsel for the

6

Prepetition Administrative Agent; (e) the Prepetition Collateral Agent (as defined herein); (f) counsel for the Prepetition Collateral Agent; (g) counsel for the Backstoppers; (h) the United States Environmental Protection Agency; (i) the United States Attorney's Office for the District of Delaware; (j) the Internal Revenue Service; (k) the cash management banks with whom the Debtors maintain their bank accounts; (l) the Disputed Mechanics' Lien Holders (as defined herein); (m) all parties who are known, after reasonable inquiry, to have asserted a lien, encumbrance, or claim in the Prepetition Collateral; and (n) any other party that has requested notice pursuant to Bankruptcy Rule 2002. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and of the Final Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 2002, 4001(b), (c), and (d).

5.    *Debtors' Stipulations*.  Without prejudice to the rights of any party (but subject to the limitations thereon contained in Paragraph 20 hereof), the Debtors admit, stipulate, and agree that:

(a)    as of the Petition Date, the Debtors were unconditionally indebted and liable to the Prepetition Secured Parties, without defense, counterclaim or offset of any kind, for all of the obligations (the "Prepetition Obligations") under (i) the Prepetition Loan Documents, including the loans made by the Prepetition Lenders in the aggregate principal amount of $1,061,197,995.53 under the Prepetition Credit Agreement plus accrued and unpaid interest and fees in accordance with the terms of the Prepetition Loan Documents, and (ii) the J. Aron Swap Agreements, as set forth in Paragraph 5(f) hereof; the Prepetition Obligations are unconditionally and irrevocably guaranteed by the Guarantors (as defined in the Prepetition Credit Agreement) and, subject to the existence and potential priority of the Disputed Mechanics' Liens (as defined

7

herein), secured by first priority security interests in and liens (collectively, the "First Priority Prepetition Liens") on substantially all of the Debtors' assets including the Cash Collateral (collectively, the "Prepetition Collateral"), pursuant to that certain Amended and Restated First-Lien Guarantee and Security Agreement, dated as of June 20, 2011 (as amended, restated, supplemented or otherwise modified, the "Longview Amended Security Agreement"), among Holdings, the Borrower, the Guarantors (as defined therein), and Union Bank, N.A., as collateral agent (the "First-Lien Prepetition Collateral Agent"; the First-Lien Prepetition Collateral Agent, together with each other Applicable Collateral Agent (as defined in the Intercreditor Agreement (as defined herein)), the "Prepetition Collateral Agent"; together with the Prepetition Administrative Agent, the Prepetition Lenders, and J. Aron (as defined herein), the "Prepetition Secured Parties") and the other Prepetition Loan Documents;

(b)    the Prepetition Obligations constitute the legal, valid, binding, non-avoidable obligations of each of the Debtors, and the First Priority Prepetition Liens are valid, binding, perfected, non-avoidable, and enforceable liens on and security interests in the Prepetition Collateral;

(c)    (i) no portion of the Prepetition Obligations, the Prepetition Loan Documents, the J. Aron Swap Agreements, and the transactions contemplated thereby is subject to contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined by section 101(5) of the Bankruptcy Code), impairment, or subordination (whether equitable, contractual, or otherwise) or other challenge of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law (including without limitation, under sections

8

502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act); provided that, for the avoidance of doubt, and notwithstanding anything herein to the contrary, the Debtors reserve all rights to dispute the amount of any claim (as defined by section 101(5) of the Bankruptcy Code) arising from or relating to the termination of any Electricity Hedge Agreement (as defined herein); and (ii) the Debtors do not have any claims, challenges, counterclaims, causes of action, defenses, recoupment, disgorgement, or setoff rights related to the Prepetition Obligations, the J. Aron Swap Agreements, or the Prepetition Loan Documents (other than with respect to claims arising under the Electricity Hedge Agreements), whether arising under the Bankruptcy Code or applicable nonbankruptcy law, on or prior to the date hereof, against the Prepetition Secured Parties, and the Debtors irrevocably waive, for themselves, and their subsidiaries, any right to challenge or contest in any way the perfection, validity, and enforceability of the First Priority Prepetition Liens or the validity or enforceability of the Prepetition Obligations, the Prepetition Loan Documents, or the J. Aron Swap Agreements.  The Prepetition Obligations constitute allowed claims for all purposes between and against the Debtors' estates, and neither the Prepetition Collateral Agent nor the Prepetition Administrative Agent nor any Prepetition Secured Party is required to file a proof of claim with regard to the Prepetition Obligations or the First Priority Prepetition Liens other than with respect to the obligations under the Electricity Hedge Agreements.  Any order entered by the Court in relation to the establishment of a bar date for any claims (including administrative expense claims) in any of these chapter 11 cases or subsequent chapter 7 or chapter 11 cases (each a "Successor Case") shall not apply to the Prepetition Lenders, the Prepetition Administrative Agent, the Prepetition Collateral Agent, or

9

J. Aron with respect to the Prepetition Obligations (including the First Priority Prepetition Liens, other than with respect to the Electricity Hedging Obligations).

(d)     the First Priority Prepetition Liens, security interests, and rights granted to the Prepetition Secured Parties pursuant to, and in connection with (i) the Prepetition Loan Documents, including (x) the Longview Amended Security Agreement and (y) that certain Amended and Restated Collateral Agency and Intercreditor Agreement, dated as of February 28, 2007 (as amended, restated, supplemented or otherwise modified, the "Intercreditor Agreement") among the Borrower, Holdings, the Guarantors (as defined therein), Union Bank, N.A., as each Applicable Collateral Agent (as defined therein), and the Prepetition Administrative Agent, and (ii) the J. Aron Swap Agreements are, in each case, valid, binding, perfected, enforceable, non-avoidable liens and security interests on the Prepetition Collateral senior in priority over any and all other liens on the Prepetition Collateral, subject in each case to (x) permitted exceptions under the Prepetition Credit Agreement, the other Prepetition Loan Documents, and the J. Aron Swap Agreements to the extent such permitted exceptions were valid, properly perfected, non-avoidable liens senior in priority to the liens and security interests of the Prepetition Secured Parties on the Petition Date and (y) the Disputed Mechanics' Lien Holders' liens and security interests, if any, but solely to the extent such Disputed Mechanics' Lien Holders' liens and security interests are adjudicated, pursuant to a final order of the Court or any other court or legal forum of competent jurisdiction, not subject to appeal, to constitute duly perfected and valid liens that are senior to the First Priority Prepetition Liens;

(e)     pursuant to that certain Waiver and Second Amendment to Credit Agreement, dated as of April 29, 2013 (as otherwise amended, restated, supplemented or

otherwise modified, the "Second Amendment"), by and among Holdings, the Borrower, the Prepetition Lenders, and the Prepetition Administrative Agent, the Debtors caused the Agent Account (as defined therein) to be funded for the benefit of the Prepetition Administrative Agent and the ratable benefit of the Prepetition Lenders on account of the Prepetition Obligations (other than obligations arising under the J. Aron Swap Agreements), including with respect to the payment of the fees and expenses of the Prepetition Administrative Agent (the "Agent Account"). The amounts in the Agent Account are property of the Prepetition Secured Parties (other than J. Aron), do not constitute Cash Collateral or Prepetition Collateral of any kind, and are not property of the Debtors' estates; further, the determination at any time of whether to access the funds in the Agent Account is in the sole discretion of the Prepetition Administrative Agent, acting at the direction of the Backstoppers (and for the avoidance of doubt, the Prepetition Administrative Agent, acting at the direction of the Backstoppers, shall be entitled at any time to access such funds and distribute same in accordance with the Intercreditor Agreement and the Prepetition Loan Documents, without any further notice, hearing or order), and the Debtors do not have any rights with regard thereto, or with regards to the Agent Account whatsoever;

(f)    Longview Power, LLC was a party to an interest rate swap agreement with J. Aron & Company ("J. Aron"), pursuant to that certain ISDA Master Agreement, dated as of February 28, 2007 (the "J. Aron Swap"). J. Aron, Longview Power, LLC and Union Bank, N.A., in its capacity as each Applicable Collateral Agent under the Intercreditor Agreement, are also parties to that certain Accession Agreement, dated as of December 21, 2012 (the "Swap Counterparty Accession Agreement") and together with the J. Aron Swap, the "J. Aron Swap

11

Agreements"). Pursuant to the Swap Counterparty Accession Agreement, obligations arising under the J. Aron Swap constitute First-Lien Asset Secured Obligations (as defined in the Prepetition Credit Agreement) secured by the Debtors' assets to the extent provided by the Security Documents (as defined in the Prepetition Credit Agreement). As of the Petition Date, the Debtors were unconditionally indebted and liable to J. Aron on account of the J. Aron Swap without defense, counterclaim, or offset of any kind, and J. Aron shall have an allowed claim for all purposes against the Debtors in an amount equal to $1,651,500.00 plus accrued and unpaid interest and any reasonable, actual and documented fees in accordance with the terms of the J. Aron Swap Agreements solely to the extent permitted under section 506(b) of the Bankruptcy Code, for which, for the avoidance of doubt, a proof of claim is not necessary.

(g)     Longview Power, LLC was a party to electricity price hedges with: (i) BP Energy Company ("BP Energy") pursuant to that certain ISDA Master Agreement, dated as of March 29, 2011 (the "BP Electricity Hedging Agreement") and (ii) EDF Trading North America, LLC ("EDF," and together with BP Energy, the "Electricity Hedge Counterparties") pursuant to that certain ISDA Master Agreement, dated as of March 2, 2012 (the "EDF Hedging Agreement," together with the BP Hedging Agreement, the "Electricity Hedge Agreements"). BP Energy, the Borrower, and the Prepetition Collateral Agent are also party to that certain Accession Agreement, dated as of June 20, 2011 (the "BP Accession Agreement"), and EDF, Longview Power, LLC, and the Prepetition Collateral Agent are party to that certain Accession Agreement, dated as of March 2, 2012 (the "EDF Accession Agreement" and together with BP Electricity Hedge Accession Agreement, collectively, the "Electricity Accession Agreements"). Pursuant to the Electricity Accession Agreements, obligations arising under the Electricity

12

Hedge Agreements constitute First-Lien Asset Secured Obligations secured by the Debtors'
assets to the extent provided by the Security Documents; and

        (h)     Any and all of the Debtors' cash, including cash and other amounts on
deposit or maintained in any account or accounts by the Debtors (including, without limitation,
any and all accounts referred to in the *Debtors' Motion For Entry Of Interim And Final Orders
(I) Authorizing The Debtors To (A) Continue To Operate Their Cash Management Systems,
(B) Honor Certain Prepetition Obligations Related Thereto, (C) Continue Current Investment
Practices, (D) Maintain Existing Business Forms, And (E) Continue To Perform Intercompany
Transactions, (II) Waiving The Deposit And Investment Requirements Of Section 345(b) Of The
Bankruptcy Code, And (III) Granting Related Relief*) (the "Cash Management Motion") [Docket
No. 7] other than the Longview State Obligations Accounts (as defined in the Cash Management
Motion)), and any amounts generated by the collection of accounts receivable, the exercise of
letter of credit rights, (including, to the extent of the Debtors' interest in such property, letters of
credit issued on behalf of Foster Wheeler (as defined herein) in favor of the Debtors (the "Foster
Wheeler L/Cs")), the sale of inventory, or other disposition of the Prepetition Collateral existing
as of the Petition Date, the proceeds of any of the foregoing and the Prepetition Collateral is the
Prepetition Secured Parties' cash collateral within the meaning of section 363(a) of the
Bankruptcy Code (the "Cash Collateral").    The amounts placed in the Longview State
Obligations Accounts may only be in an aggregate amount permitted by the order approving the
Cash Management Motion, and may not exceed the amounts placed in such accounts as of
August 28, 2013, as set forth in the Cash Management Motion.  Further, to the extent that any
amounts in the Longview State Obligations Accounts are not used for the purposes set forth in

13

the Cash Management Motion, then any such residual amounts shall be automatically transferred to accounts which are collateral of the Prepetition Secured Parties and shall be deemed Cash Collateral, and the Longview State Obligations Accounts themselves (and any amounts in such accounts) shall be automatically deemed Cash Collateral.  The Debtors will not transfer any additional monies into the Longview State Obligations Accounts without (x) providing ten (10) business days' notice to the Administrative Agent, the First-Lien Collateral Agent, the Backstoppers, and the Creditors' Committee, if any, and (y) the consent of the Prepetition Administrative Agent, the First-Lien Collateral Agent, and the Backstoppers, such consent not to be unreasonably withheld.

(i)    The Debtors' acknowledgments, stipulations, and releases set forth in this Paragraph 5 shall be binding on the Debtors and their respective representatives, successors and assigns and, subject to any action timely commenced before the expiration of the Challenge Period (as defined herein) by:  (x) any Creditors' Committee appointed in these chapter 11 cases; or (y) a party in interest with requisite standing other than the Creditors' Committee, if any, on each of the Debtors' estates, all creditors thereof (including any parties that have asserted claims) and each of their respective representatives, successors and assigns, including any trustee or other representative appointed in these chapter 11 cases, whether such trustee or representative is appointed in chapter 11 or chapter 7.

6.    *Findings Regarding the DIP Financing Loans (Including the Contemplated Fees Related Thereto) and the Use of Prepetition Collateral (Including the Cash Collateral).*

(a)    Good cause has been shown for the entry of this Final Order.

(b)    The Debtors require the DIP Financing Loans and need to continue to use the Prepetition Collateral, including the Cash Collateral, to fund, among other things, their

14

operations and to pay for certain costs and expenses related to the Debtors' chapter 11 cases and to fund the repair of certain Prepetition Collateral.

(c)     The Debtors are unable to obtain financing on more favorable terms and conditions from sources other than the DIP Financing Lenders pursuant to, and for the purposes set forth in, the DIP Financing Documents and are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors also are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without granting priming liens under section 364(d)(1) of the Bankruptcy Code and the Superpriority Claims (as defined herein) on the terms and conditions set forth in this Final Order and the DIP Financing Documents.

(d)     The terms upon which the Debtors will be permitted to use Cash Collateral pursuant to this Final Order and the terms of the DIP Financing Loans (including any and all Fees contemplated thereby to be paid to the Backstoppers, the DIP Financing Lenders, and the DIP Financing Agents) are fair and reasonable, were negotiated on an arm's length basis, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration. The DIP Financing Agent, the DIP Financing Lenders, the Prepetition Administrative Agent and the Prepetition Lenders either consent or do not object to the use of Cash Collateral on the terms and for the purposes specified herein and the DIP Financing Documents.

(e)     The DIP Financing Documents and the use of the Prepetition Collateral, including the Cash Collateral, have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the DIP Financing Agent, the DIP Financing

15

Lenders, the Prepetition Administrative Agent (on behalf of the Prepetition Secured Parties (other than J. Aron)), the First-Lien Collateral Agent, and the Backstoppers, and all of the Debtors' obligations and indebtedness arising under or in connection with the DIP Financing Documents, this Final Order and the DIP Financing Loans (collectively, the "DIP Financing Obligations") shall be deemed to have been extended by the DIP Financing Agent and the DIP Financing Lenders in "good faith" as such term is used in sections 363(m) and 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.

(f)     Absent granting the final relief set forth in this Final Order, the Debtors' estates and their business operations will be immediately and irreparably harmed. In particular, the Debtors require immediate postpetition financing, and continued use of the Prepetition Collateral, including the Cash Collateral, in order to, among other things, permit the orderly continuation of their businesses, pay for certain costs and expenses related to the Debtors' chapter 11 cases, and fund necessary repairs of certain Prepetition Collateral. The borrowing of the DIP Financing Loans and the use of the Prepetition Collateral, including the Cash Collateral, in accordance with this Final Order and the DIP Financing Documents are, therefore, in the best interests of the Debtors' estates.

7.      *Findings Regarding Adequate Protection.*  Subject to paragraph 13(d) of this Final Order, each of (i) the Prepetition Secured Parties, (ii) the Electricity Hedge Counterparties, and (iii) to the extent they are found, pursuant to a final order not subject to appeal, to hold valid

16

perfected, non-avoidable liens on any Prepetition Collateral, the Disputed Mechanics' Lien Holders, are adequately protected with respect to their respective interests in the Prepetition Collateral by: (w) the 507(b) Claim (as defined herein), (x) the Adequate Protection Liens (as defined herein), (y) the additional forms of adequate protection granted pursuant to this Final Order, and (z) the equity cushion that exists with respect to the Debtors' assets after accounting for such parties' interests, if any, in such assets and the DIP Liens.

8.     *Authorization of the DIP Financing Loans and the DIP Financing Documents.*

(a)     The Debtors are hereby authorized to enter into, and perform under, the DIP Financing Documents and, in the case of Borrower, to borrow, subject to the terms and conditions of this Final Order and the Budget (as defined herein), the DIP Financing Loans in an aggregate principal amount of up to $150 million for working capital and other general corporate purposes of the Debtors.

(b)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts (and to the extent such acts have already occurred, such acts are hereby ratified) and to execute and deliver all instruments and documents that the DIP Financing Agent determines to be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Financing Documents, including without limitation:

(i)     the execution, delivery and performance of the DIP Financing Documents (including, without limitation, the Commitment Letter and the Administrative Agent Fee Letter);

17

(ii)     the non-refundable payment to the DIP Financing Agents, the DIP Financing Lenders, and the Backstoppers, as the case may be, of the fees set forth in the DIP Financing Documents, including, without limitation, any upfront, commitment or administrative or collateral agency fee, which is referred to in any fee letters executed among the Debtors and the DIP Financing Agents and reasonable costs and expenses as may be due from time to time as provided in this Final Order and in the DIP Financing Documents, including, without limitation, reasonable attorneys' fees and other financial advisory, consultant and professional fees and disbursements as provided in the DIP Financing Documents;

(iii)     making any payments in respect of Adequate Protection Obligations (as defined herein) as provided for in this Final Order and the DIP Financing Agreement; and

(iv)     the performance of all other acts required under or in connection with the DIP Financing Documents.

(c)     The DIP Financing Documents constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Final Order and the DIP Financing Documents.  No obligation, payment, transfer or grant of security or superpriority claim by the Debtors under the DIP Financing Documents or this Final Order shall be subject to contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined by section 101(5) of the Bankruptcy Code), impairment, or subordination (whether equitable, contractual, or

18

otherwise) or other challenge of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law (including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act).

9.      *Budget*.  Attached as <u>Exhibit 1</u> hereto and incorporated by reference herein is the 13-week budget (which has been approved by the Backstoppers and the DIP Financing Agent) setting forth the Debtors' projected receipts and disbursements for the 13-week period after the date hereof (the "<u>Budget</u>").  The Debtors' use of Cash Collateral and other unrestricted cash and cash equivalents shall be only permitted pursuant to the terms of, and in accordance with, the Budget and this Final Order, as such may be amended in accordance with the terms hereof, except that neither (x) the Carve-Out for all fees to be paid to the Clerk of the Bankruptcy Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate nor (y) the Carve-Out for Professional Fees (as defined herein) incurred by Professional Persons (as defined herein) shall in any way be subject to the Budget. The Backstoppers, the DIP Financing Lenders, the DIP Financing Agent, and the Prepetition Administrative Agent shall have no obligation with respect to the Debtors' use of the Cash Collateral, and shall not be obligated to ensure or monitor the Debtors' compliance with the Budget or, subject to the DIP Financing Lenders' obligations in Paragraph 10(e) hereof, to pay (directly or indirectly from the Cash Collateral) any expenses incurred or authorized to be incurred pursuant to the Budget.  Any and all Cash Collateral and unrestricted cash and cash equivalents shall be used by the Debtors in accordance with this Final Order and the Budget; <u>provided that</u> for the avoidance of doubt, and notwithstanding anything herein to the contrary,

19

the obligations benefitting from the Carve-Out shall in no way be subject to the Budget.  The Backstoppers, the DIP Financing Agent's, and the Prepetition Administrative Agent's, consent to the Budget shall not be construed as consent to the use of any Cash Collateral after the occurrence of an Event of Default, regardless of whether the aggregate funds shown on the Budget have been expended.  Commencing on the first Monday after the date on which this Court enters this Final Order (or the next business day if such day is not a business day), and continuing every week thereafter, the Debtors shall be authorized, but not directed to deliver an updated budget for the following 13-week period (each, a "Proposed Budget") to the Backstoppers, the DIP Financing Agent, and the Prepetition Administrative Agent.    The Proposed Budget shall only become the Budget with the consent of the Backstoppers, the DIP Financing Agent, and the Prepetition Administrative Agent, such consent not to be unreasonably withheld; provided that if the Backstoppers, the DIP Financing Agent, and the Prepetition Administrative Agent do not consent to a Proposed Budget, the Budget then in effect shall remain the Budget for all purposes of this Final Order, and the Debtors shall be permitted to continue to use Cash Collateral in accordance with such Budget and the terms of this Final Order until such time as the Proposed Budget becomes the Budget with the reasonable consent of the Backstoppers, the DIP Financing Agent, and the Prepetition Administrative Agent.

10.    *DIP Financing Liens.*  As security for the DIP Financing Obligations, the DIP Financing Lenders are hereby granted the following claims, liens, security interests, rights, and benefits, in each case subject and subordinate to the Carve-Out in all respects and payment in full of the obligations benefiting from the Carve-Out, and perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control

20

agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Financing Lenders or the DIP Financing Agents (including paragraphs (a), (b), and (c) below, collectively, the "DIP Financing Liens")):

(a)    *Superpriority Claims.*    An allowed superpriority administrative expense claim pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code as provided for by section 507(b) of the Bankruptcy Code on account of the DIP Financing Obligations (the "Superpriority Claim").  The Superpriority Claim shall be an allowed claim against each of the Debtors (jointly and severally) with priority over any and all administrative expenses and all other claims asserted against the Debtors now, existing or hereafter arising of any kind whatsoever, including all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including sections 105, 326, 327, 328, 330, 331, 503(b), 507(a), 507(b), 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment.

(b)    *Postpetition Priming Liens.*    A valid, binding, continuing, enforceable, fully-perfected, non-avoidable, first priority, (i) senior, priming pledge of (x) all promissory notes owned by the Debtors and (y) all capital stock owned by the Debtors and (ii) senior, priming lien on, and security interest in, all property (including any previously unencumbered property), whether now owned or hereafter acquired or existing and wherever located, of each Debtor and each Debtor's "estate" (as created pursuant to section 541(a) of the Bankruptcy Code), of any kind or nature whatsoever, real or personal, tangible or intangible, and now

21

existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit (including, to the extent of the Debtors' interest in such property the Foster Wheeler L/Cs), owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of each Debtor, other equity or ownership interests, including equity interests in subsidiaries and non-wholly-owned subsidiaries, money, investment property, any causes of action under sections 502(d), 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code, and the proceeds thereof (collectively, the "Avoidance Actions"), Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above, documents, vehicles, intellectual property, securities, partnership or membership interests in limited liability companies and capital stock, including, without limitation, the products, proceeds and supporting obligations thereof, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located (collectively, the "DIP Financing Collateral"), all such property in each case that is not subject to any (i) Permitted Liens (as defined in the DIP Financing Agreement), (ii) valid, perfected, enforceable and unavoidable liens in existence as of Closing and which are senior to the liens and security interests securing the obligations under the Longview Credit Agreement, or (iii) valid,

K&E 28496872.9

enforceable and unavoidable liens in existence as of Closing that are perfected subsequent to Closing as permitted by section 546(b) of the Bankruptcy Code and which are senior to the liens and security interests securing the obligations under the Longview Credit Agreement. For the avoidance of doubt, liens and security interests granted under the DIP Financing Documents shall prime and be senior to the liens and security interests, if any, that have been asserted by the Disputed Mechanics' Lien Holders and that are currently disputed by, among others, the Debtors.

      (c)    *First Lien on Unencumbered Property.* Pursuant to sections 364(c)(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-avoidable first priority lien on, and security interest in, all property (including any previously unencumbered property), whether now owned or hereafter acquired or existing and wherever located, of each Debtor and each Debtor's "estate" (as created pursuant to section 541(a) of the Bankruptcy Code), of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of each Debtor, other equity or ownership interests, including equity interests in subsidiaries and non-wholly-owned subsidiaries, money, investment property, any Avoidance Actions, Cash Collateral, and all cash

and non-cash proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above, documents, vehicles, intellectual property, securities, partnership or membership interests in limited liability companies and capital stock, including, without limitation, the products, proceeds and supporting obligations thereof, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located, which in each case is not subject to (x) valid, perfected, unavoidable, and enforceable liens in existence on or as of the Petition Date or (y) valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code (the "Unencumbered Property"); provided, however, for the avoidance of doubt, the Disputed Mechanics' Lien Holders shall only have the right to assert a prepetition lien on, or security interest in, those assets which may constitute their prepetition collateral, if any, and which assets shall not include, among other things, cash, Cash Collateral, or Avoidance Actions.

       (d)    *Liens Senior to Certain Other Liens.* The DIP Financing Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after entry of this Final Order other than Permitted Liens or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

       (e)    For purposes hereof, the "Carve-Out" shall mean the sum of (i) all fees required to be paid to the clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory

rate (without regard to the notice set forth in (iii) below); (ii) fees and expenses of up to $25,000 incurred by a trustee that would otherwise be entitled to priority under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) subject to the Committee Monthly Cap with respect to Professional Fees incurred by Professional Persons retained by the Creditors' Committee, if any, and subject to any Professional Fees permitted to be incurred by the Creditors' Committee, if any, under the Investigation Budget (as defined herein), to the extent allowed at any time, whether by interim order, procedural order or otherwise, all fees, costs, and expenses (the "Professional Fees") incurred by persons or firms retained by the Debtors or the Creditors' Committee, if any, pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "Professional Persons") at any time before or on the first business day following delivery by the DIP Financing Agent of a Carve-Out Trigger Notice (as defined herein), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice (the "Pre-Trigger Date Fees"); and (iv) after the first business day following delivery by the DIP Financing Agent of the Carve-Out Trigger Notice (the "Trigger Date"), to the extent allowed at any time, whether by interim order, procedural order or otherwise, the payment of (x) all Professional Fees of Professional Persons retained by the Debtors and (y) the payment of Professional Fees of Professional Persons incurred by the Creditors' Committee in an aggregate amount for clauses (x) and (y) not to exceed $1,250,000 incurred on and after the Trigger Date (the amount set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"); provided that nothing herein shall be construed to impair the ability of any party to object to the reasonableness of any fees, expenses, reimbursement or compensation described in clauses (iii) or (iv) above, on any grounds. On the day on which a

K&E 28496872.9

Carve-Out Trigger Notice is given to the Debtors, such Carve-Out Trigger Notice also (x) shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an aggregate amount equal to the accrued and unpaid Pre-Trigger Date Fees, and (y) shall constitute an irrevocable notice from the Debtors to the DIP Financing Lenders to fund a Term Loan, and an obligation of the DIP Financing Lenders to fund a Term Loan, to the Debtors in an amount equal to the balance of accrued and unpaid Pre-Trigger Date Fees, if any, after the Debtors' funding of the reserve in clause (x) immediately preceding this clause (y); provided that, in each case, the Debtors shall deposit and hold any such amounts in a segregated account at the DIP Financing Agent in trust (the "Carve-Out Reserve") (it being understood that the DIP Financing Lenders shall have a first priority lien and security interest on any residual amounts in such segregated account, and the segregated account itself, after all obligations arising under the Carve-Out have been satisfied).  After the Carve-Out Reserve has been fully funded, the Debtors may, subject to the consent of the Backstoppers and the DIP Financing Agent, escrow additional monies in an amount not to exceed the amount of projected Professional Fees reasonably and in good faith anticipated by the Debtors to be incurred by the Debtors for the immediately succeeding 30-day period ("Additional Reserved Funds"), and such Additional Reserved Funds (x) shall not be available to the Adequate Protection Parties for application to the Obligations other than with respect to the Adequate Protection Parties' residual interest in such Additional Reserved Funds, (y) shall reduce on a dollar for dollar basis the Post-Carve Out Trigger Notice Cap, and (z) shall be held in trust exclusively for payment of the Professional Fees and all fees required to be paid to the clerk of the Bankruptcy Court and to the Office of the United States Trustee under section

26

1930(a) of title 28 of the United States Code plus interest at the statutory rate. Notwithstanding the foregoing, (x) the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (a) the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against any of the Prepetition Secured Parties, the DIP Financing Lenders or DIP Financing Agents, including challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the Prepetition Loan Documents or the J. Aron Swap Agreements in favor of the Prepetition Secured Parties (whether in such capacity or otherwise) or the DIP Financing Documents in favor of the DIP Financing Lenders or the DIP Financing Agents, including, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable nonbankruptcy law or otherwise; (b) attempts to modify any of the rights granted to the Prepetition Secured Parties, DIP Financing Lenders, or DIP Financing Agents hereunder; (c) attempts to prevent, hinder or otherwise delay any of the Prepetition Secured Parties', DIP Financing Lenders, or DIP Financing Agents' assertion, enforcement or realization upon any Collateral in accordance with the Prepetition Loan Documents or the J. Aron Swap Agreements or the DIP Financing Documents or this Final Order other than to seek a determination that an Event of Default under the DIP Financing Documents or this Final Order has not occurred or is not continuing; or (d) paying any amount on account of any claims arising before the Petition Date unless such payments are approved by an order of this Court, and (y) so long as the Carve-Out Trigger Notice shall not have been delivered, the Carve-Out shall not be reduced by the payment of Professional Fees allowed at any time by this

27

Court.  Any claim incurred in connection with any of the activities described in the previous sentence (other than permitted in connection with the Investigation Budget in an amount not exceeding such Investigation Budget, but only as permitted by this Final Order) shall not be allowed, treated, or payable as an administrative expense claim for purposes of 1129(a)(9)(A) of the Bankruptcy Code.  For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by any of the Prepetition Administrative Agent, the DIP Financing Agent, or counsel to the Backstoppers to the Debtors' counsel and their co-counsel, the United States Trustee, counsel for the Disputed Mechanics' Lien Holders, and lead counsel for the Creditors' Committee, if any, delivered upon the occurrence and during the continuance of a Termination Event, stating that the Post-Carve Out Trigger Notice Cap has been invoked.  For the avoidance of doubt and notwithstanding anything to the contrary herein or in the DIP Financing Documents, the Carve-Out shall be senior to all liens and claims securing the Prepetition Loan Documents, the DIP Financing Documents, the Adequate Protection Liens, the DIP Financing Liens, and the Superpriority Claim, and any and all other forms of adequate protection, liens or claims securing the First-Lien Asset Secured Obligations.  Further, for the avoidance of doubt and notwithstanding anything herein to the contrary, following a Termination Event, the DIP Financing Lenders shall not sweep or foreclose on cash (including cash received as a result of the sale of any assets) of the Debtors until the Carve-Out Reserve has been fully funded, but shall have a first priority, fully perfected, non avoidable security interest in any residual interest in the Carve-Out Reserve, with any excess paid first, to the DIP Financing Administrative Agent for application in accordance with the DIP Financing Documents, and second, to the Prepetition Secured Parties, as the case may be.

*[handwritten: Counsel to the Disputed Mechanics' Lien Holders,]*

11.    *Remedies upon an Event of Default Under the DIP Financing Agreement (DIP Financing Lenders and DIP Financing Agents).*  The Debtors shall promptly provide notice to counsel to the Backstoppers, and the DIP Financing Agent (with a copy to counsel for the Creditors' Committee, if any, and the U.S. Trustee) of the occurrence of any Event of Default (as defined in the DIP Financing Agreement), at which time the DIP Financing Obligations, as applicable, shall become due and payable.  Upon the occurrence of an Event of Default and following the giving of three (3) business days' written notice (the "DIP Enforcement Notice") to the Debtors, counsel for the Creditors' Committee, if any, counsel for the Disputed Mechanics' Lien Holders, and the U.S. Trustee (the "DIP Financing Notice Period"), the DIP Financing Lenders and the DIP Financing Agents may exercise any remedies available to them under this Final Order and applicable non-bankruptcy law, including but not limited to foreclosing upon the DIP Financing Collateral or otherwise enforcing the DIP Financing Obligations and the DIP Financing Liens on any or all of the DIP Financing Collateral and/or to exercise any other default-related remedies under the DIP Financing Agreement, this Final Order or applicable law in seeking to recover payment of the DIP Financing Obligations; provided that the DIP Financing Agents and the DIP Financing Lenders hereby consent to an expedited hearing before this Court to be held within such three (3) business day period or as otherwise scheduled by the Court.  Unless the Court orders otherwise during the DIP Financing Notice Period (unless such period may be extended by the Court), the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated at the end of the DIP Financing Notice Period, without further notice or order of the Court and the DIP Financing Lenders and the DIP Financing Agents shall be permitted to exercise all rights and remedies set forth in this Final

Order, the DIP Financing Documents, and as otherwise available at law without further order or application or motion to the Court, and without restriction or restraint by any stay under section 362 or 105 of the Bankruptcy Code, or otherwise.

      12.    *Entitlement to Adequate Protection.* (i) The Prepetition Secured Parties, (ii) the Electricity Hedge Counterparties, and (iii) only to the extent they are found, pursuant to a final order by this Court or any other court or legal forum of competent jurisdiction, not subject to appeal, to hold valid, perfected, non-avoidable liens on any Prepetition Collateral, the Disputed Mechanics' Lien Holders (provided, however, that for the avoidance of doubt, notwithstanding anything in this Final Order to the contrary, the Disputed Mechanics' Lien holders shall only have an interest in the Prepetition Collateral entitled to adequate protection in which they are found to have an interest pursuant to a final order of this Court or any other court or legal forum of competent jurisdiction not subject to appeal) (the foregoing parties in (i), (ii), and (iii), collectively, the "Adequate Protection Parties") are entitled to adequate protection of their interests in the Prepetition Collateral (it being understood that the Prepetition Secured Parties' interests, but not those of the Disputed Mechanics' Lien Holders except to the extent of rights of offset and recoupment, extend to cash, the Cash Collateral and Avoidance Actions) as of the Petition Date in an amount equal to the aggregate postpetition diminution in value of such interests from and after the Petition Date, as applicable, including any such diminution resulting from the use by the Debtors of the Cash Collateral, the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Debtors' incurrence of the DIP Financing Loans, and the use of the Cash Collateral pursuant to this Final Order (such diminution in value, the "Adequate Protection Obligations").   All distributions made on account of the Adequate

K&E 28496872.9

Protection Obligations shall be made and applied in accordance with the Prepetition Loan Documents, including the Intercreditor Agreement and the J. Aron Swap Agreements. The Adequate Protection Parties shall be granted the following forms of Adequate Protection:

        (a)      Section 507(b) Claim. Subject in all respects to the Carve-Out, an allowed superpriority administrative expense claim pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code as provided for by section 507(b) of the Bankruptcy Code on account of the Adequate Protection Obligations (the "507(b) Claim"). Subject in all respects to the Carve-Out, the Superpriority Claim held by the DIP Financing Lenders, and the DIP Financing Liens, the 507(b) Claim shall be an allowed claim against each of the Debtors (jointly and severally) with priority over any and all administrative expenses and all other claims asserted against the Debtors now, existing or hereafter arising of any kind whatsoever, including all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including sections 105, 326, 327, 328, 330, 331, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment; provided that the 507(b) Claim, if any, of the Disputed Mechanics' Lien Holders shall rank in the same relative priority to the 507(b) Claim of the Prepetition Secured Parties and the Electricity Hedge Counterparties, as the Disputed Mechanics' Lien Holders' claims rank in relation to the Prepetition Secured Parties' Claims and the Electricity Hedge Counterparties' Claims as such priority is determined by a final order of this Court

K&E 28496872.9

(or any other court or legal forum of competent jurisdiction) not subject to appeal; provided, further that, (x) for the avoidance of doubt, the Prepetition Secured Parties shall have recourse to the proceeds of Avoidance Actions on account of the 507(b) Claim and (y) notwithstanding anything herein to the contrary, no Disputed Mechanics' Lien Holder shall have recourse to proceeds of any action under section 506(c) of the Bankruptcy Code on account of any 507(b) Claim.  Except to the extent expressly set forth in this Final Order, the Disputed Mechanics' Lien Holders, the Prepetition Agent and the Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in respect of the 507(b) Claim unless and until all DIP Financing Obligations shall have indefeasibly been paid in full in cash.

(b)     *Adequate Protection Claims and Liens.*  Subject in all respects to the Carve-Out, the DIP Financing Liens, and the Permitted Liens, effective as of the Petition Date and perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Adequate Protection Parties, the following security interests and liens are hereby granted to the Adequate Protection Parties (all such liens and security interests, the "Adequate Protection Liens"); provided that, in each case, the Adequate Protection Liens granted, if any, to the Disputed Mechanics' Lien Holders shall rank in the same relative priority to the Adequate Protection Liens of the Prepetition Secured Parties and the Electricity Hedge Counterparties as the Disputed Mechanics' Liens rank in relation to the First Priority Prepetition Liens of the Prepetition Secured Parties and the Electricity Hedge

32

Counterparties, as such priority is determined by a final order of this Court (or any other court or legal forum of competent jurisdiction) not subject to appeal:

(i)     *Liens on Unencumbered Property.*   Subject in all respects to the Carve-Out, the DIP Financing Liens, and the DIP Financing Claims, pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-avoidable additional and replacement lien on, and security interest in, all property (including any previously unencumbered property), whether now owned or hereafter acquired or existing and wherever located, of each Debtor and each Debtor's "estate" (as created pursuant to section 541(a) of the Bankruptcy Code), of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of each Debtor, other equity or ownership interests, including equity interests in subsidiaries and non-wholly-owned subsidiaries, money, investment property, the Avoidance Actions, Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above, documents, vehicles, intellectual property, securities, partnership or membership interests in limited liability companies and capital stock, including, without

33

limitation, the products, proceeds and supporting obligations thereof, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located (all such property in each case that is not subject to (x) valid, perfected, unavoidable, and enforceable liens in existence on or as of the Petition Date or (y) valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code); provided, however, that notwithstanding the foregoing, (x) the Disputed Mechanics' Lien Holders shall only have such a lien on, or security interest in, those assets which may constitute their prepetition collateral, if any, and which assets shall not include, among other things, cash or Cash Collateral except to the extent of rights of offset and recoupment, or Avoidance Actions in any way and (y) in no instance shall any Disputed Mechanics' Lien Holder have a lien on, or interest in any action arising under section 506(c) of the Bankruptcy Code (or the proceeds thereof ) on account of such liens.

(ii) *Liens Junior to Certain Existing Liens.* Subject in all respects to the Carve-Out, the DIP Financing Liens and the Permitted Liens, a valid, binding, continuing, enforceable, fully-perfected non-avoidable junior priority replacement lien on, and security interest in, all property, whether now owned or hereafter acquired or existing and wherever located, of each Debtor and each Debtor's "estate" (as created pursuant to section 541(a) of the Bankruptcy Code), property of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables

34

records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of each Debtor, other equity or ownership interests, including equity interests in subsidiaries and non-wholly-owned subsidiaries, money, investment property, the Avoidance Actions, Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above, documents, vehicles, intellectual property, securities, partnership or membership interests in limited liability companies and capital stock, including, without limitation, the products, proceeds and supporting obligations thereof, whether now existing or hereafter acquired, that is, in addition, subject to (x) valid, perfected, non-avoidable and enforceable liens in existence immediately prior to the Petition Date or (y) valid and non-avoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code; provided, however, that notwithstanding the foregoing, (x) the Disputed Mechanics' Lien Holders shall only have such a lien on, or security interest in, those assets which may constitute their prepetition collateral, if any, and which assets shall not include, among other things, cash or Cash Collateral except to the extent of rights of offset and recoupment, or Avoidance Actions in any way and (y) in no instance shall any Disputed Mechanics' Lien Holder have a lien on, or interest in any action arising under section 506(c) of the Bankruptcy Code (or the proceeds thereof) on account of such liens.

K&E 28496872.9

13.     *Additional Adequate Protection.*

As additional adequate protection,

(a)     <u>Agent Fees and Expenses</u>:  The Debtors shall pay within fourteen (14) days of presentment of an invoice to the Debtors, any Creditors' Committee (on a professional eyes only basis), the U.S. Trustee, and the Backstoppers describing in customary detail (redacted for privilege and work product) the actual, reasonable, and documented fees, costs and expenses of (i) the Prepetition Administrative Agent, (ii) the Prepetition Collateral Agent and (iii) one law firm and any local counsel retained by each of the Prepetition Administrative Agent and the Prepetition Collateral Agent, respectively, whether incurred before or after the Petition Date, in each case without further order of, or application to, the Bankruptcy Court or notice to any party. The Debtors, the Prepetition Administrative Agent, the Prepetition Collateral Agent, and other parties in interest reserve all rights regarding whether any fees, costs or expenses paid to or on behalf of the Prepetition Administrative Agent or the Prepetition Collateral Agent pursuant to this Paragraph 13(a) shall be applied to reduce the secured portion of the Prepetition Obligations if the Prepetition Obligations are determined to have been undersecured as of the Petition Date.

(b)     <u>Steering Group Fees and Expenses</u>.  The Debtors shall pay within fourteen (14) days of presentment of an invoice (which, in the case of Houlihan Lokey (as defined herein) may be a one page standard invoice with minimal description) to the Debtors, the U.S. Trustee, and any Creditors' Committee (on professionals eyes only basis), describing in customary detail (redacted for privilege and work product) the actual, reasonable, and documented fees, costs and expenses incurred by the Steering Group, whether incurred before or after the Petition Date, including the fees, costs, and expenses for (i) lead counsel for the Steering Group, Akin Gump

36

Strauss Hauer & Feld LLP ("Akin Gump"), (ii) the financial advisor for the Steering Group,

Houlihan Lokey, Capital Inc. ("Houlihan Lokey" and together with Akin Gump, the "Steering

Group Advisors"), (iii) one set of local counsel for the Steering Group, and (iv) any consultants,

engineers, or other advisors, or consultants retained by the Steering Group in connection with the

Debtors or these chapter 11 cases, including CH2M Hill Engineers Inc., SAIC Energy,

Environment & Infrastructure, LLC, and Energy Ventures Analysis, Inc., in each case, in

accordance with any prepetition engagement letters (if any) of such professional, and in each

case (x) including any success fees, transaction fee, or similar fee contemplated therein or

thereby and (y) without further order of, or application to, the Bankruptcy Court or notice to any

party.  The Debtors and the Steering Group reserve all rights regarding whether any fees or

expenses paid to or on behalf of the Steering Group pursuant to this Paragraph 13(b) shall be

applied to reduce the secured portion of the Prepetition Obligations if the Obligations are

determined to have been oversecured as of the Petition Date.

      (c)    *Budget Compliance/Additional Reporting.*  With respect to the Prepetition

Secured Parties, the Debtors shall comply with the budget and reporting requirements set forth in

this Final Order and the DIP Financing Documents; however, such compliance and rights set

forth in this section 12(c) shall only apply with respect to the Prepetition Secured Parties to the

extent that the Debtors have indefeasibly paid and satisfied in full in cash the DIP Financing

Obligations, but continue to use Cash Collateral.

      (d)    *Right to Seek Additional Adequate Protection.*  This Final Order: (i) is

without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the

Prepetition Secured Parties to request additional forms of adequate protection, subject to the

Debtors' rights to oppose any such request; (ii) is without prejudice to the Disputed Mechanics' Lien Holders' right to request additional forms of adequate protection solely upon the occurrence or during the continuation of an event that has a materially adverse effect on the Longview Debtors' enterprise value, taken as a whole, subject to any party's rights to oppose such a request; and (iii) does not constitute an admission and shall not be deemed an admission by the Prepetition Secured Parties or the Disputed Mechanics' Lien Holders that the Prepetition Secured Parties or the Disputed Mechanics' Lien Holders are in fact adequately protected by the terms and conditions of this Final Order in the event the Debtors seek to use Cash Collateral without the consent of the Prepetition Secured Parties.

(e)     Commencing on the first Monday after the date on which the Court enters this Final Order (or the next business day if such day is not a business day), and continuing every week thereafter, the Debtors shall cause counsel to the Disputed Mechanics' Lien Holders' to receive a statement (the "Draw Statement") identifying the total amount of DIP Financing Loans outstanding as of that date, and the Disputed Mechanics' Lien Holders and their affiliates may receive and hold the Draw Statement on a confidential basis.

14.    *Interest*.  In accordance with section 506(b) of the Bankruptcy Code, interest on the Prepetition Obligations shall accrue at the rates (including the applicable default rates) under the Prepetition Loan Documents and the J. Aron Swap Agreements only to the extent the Prepetition Obligations are determined to have been oversecured as of the Petition Date.  The Debtors, the Prepetition Administrative Agent, the Prepetition Collateral Agent, and the Backstoppers reserve all rights regarding whether the Prepetition Obligations are undersecured pursuant to section 506(b) of the Bankruptcy Code.

15.     *Release*.  Each of the Debtors and the Debtors' estates, on its own behalf and on behalf of each of their predecessors, their successors, and assigns (collectively, the "Releasors") shall to the maximum extent permitted by applicable law, unconditionally, irrevocably and fully forever release, remise, acquit, relinquish, irrevocably waive and discharge each of the Steering Group, the Backstoppers, the DIP Financing Lenders, the DIP Financing Agents, the Prepetition Secured Parties, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description that exist on the date hereof relating to any of the Prepetition Loan Documents, the J. Aron Swap Agreements, or the transactions contemplated under such documents, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under title 11 of the United States Code, and (iii) any and all claims and causes of action regarding the validity, priority, perfection or avoidability of the liens or claims of the Prepetition Secured Parties.

39

16.    *Termination (Adequate Protection Parties)*.  The Debtors' right to use the Cash Collateral pursuant to this Final Order shall automatically terminate (the date of any such termination, the "Termination Date") (unless such period is extended by the Prepetition Secured Parties) on the occurrence of any of the events set forth in Paragraph 16(a) through Paragraph 16(b) below (unless waived by each of the Prepetition Administrative Agent and the Backstoppers) (the events set forth in Paragraphs 16(a) and 16(b) below are collectively referred to herein as the "Termination Events"):

    (a)    any Event of Default under the DIP Financing Documents that is not waived in accordance with the terms thereof; and

    (b)    the Debtors' failure to comply with the adequate protection provisions or the covenants and other adequate protection obligations of the Debtors contained in this Final Order (including the failure to make any payments to the Prepetition Secured Parties that are not disputed in good faith when due under the terms hereof, including payments arising under Paragraph 13(a) or Paragraph 13(b) hereof).

17.    *Remedies upon the Event of Default (Adequate Protection Parties and Prepetition Administrative Agent)*.  Upon the occurrence of an Event of Default, and following the giving of three (3) business days' written notice (the "Cash Collateral Enforcement Notice") to the Debtors, counsel to the DIP Financing Agent, counsel to the Backstoppers, counsel for the Creditors' Committee, if any, counsel for the Disputed Mechanics' Lien Holders, and the U.S. Trustee (the "Cash Collateral Notice Period"), the Prepetition Secured Parties may exercise any remedies available to them under this Final Order and applicable non-bankruptcy law, including but not limited to revoking the Debtors' right, if any, to use Cash Collateral and collecting and

40

applying any proceeds of the Collateral in accordance with the terms of this Final Order and the Prepetition Loan Documents and the J. Aron Swap Agreements; provided that the Prepetition Secured Parties hereby consent to an expedited hearing before this Court to be held within such three (3) business day period or as otherwise scheduled by the Court.  Unless the Court orders otherwise during the Cash Collateral Notice Period (unless such period may be extended by the Court), the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated at the end of the Cash Collateral Notice Period, without further notice or order of the Court and the Prepetition Secured Parties shall be permitted to exercise all rights and remedies set forth in this Final Order, the Prepetition Loan Documents, and the J. Aron Swap Agreements, and as otherwise available at law without further order or application or motion to the Court, and without restriction or restraint by any stay under section 362 or 105 of the Bankruptcy Code.

18. *Perfection of DIP Financing Liens and Adequate Protection Liens.*

(a)     The DIP Financing Agents, the Prepetition Administrative Agent, and the Prepetition Collateral Agent, as applicable, are each hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted on account of the DIP Financing Liens and the Adequate Protection Obligations hereunder.  Whether or not the DIP Financing Agents, the Prepetition Administrative Agent, or the Prepetition Collateral Agent, as applicable, shall, in their respective sole discretion, file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute, subordination, contest, attack,

41

objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined by section 101(5) of the Bankruptcy Code), impairment, subordination (whether equitable, contractual or otherwise) or other challenge of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law as of the date of entry of this Final Order.  If the DIP Financing Agents, the Prepetition Administrative Agent, or the Prepetition Collateral Agent, as applicable, determines to file any financing statements, notice of liens or similar instruments, the Debtors will cooperate and assist in any such filings as reasonably requested by the DIP Financing Agent, the Prepetition Administrative Agent, or the Prepetition Collateral Agent, and the automatic stay shall be modified to allow such filings.

(b)     The DIP Financing Agents, the Prepetition Administrative Agent, or the Prepetition Collateral Agent, as applicable, may, in their discretion, cause a certified copy of this Final Order to be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording.

(c)     The Debtors shall execute and deliver to the DIP Financing Agents, the Prepetition Administrative Agent, and the Prepetition Collateral Agent, as applicable, all such agreements, financing statements, instruments and other documents as the DIP Financing Agents, the Prepetition Administrative Agent, and the Prepetition Collateral Agent, as applicable, may reasonably request to evidence, confirm, validate or perfect the DIP Financing Liens and the Adequate Protection Liens, as applicable.

K&E 28496872.9

19.    *Preservation of Rights Granted Under this Final Order.*

(a)    Notwithstanding any order dismissing any of these chapter 11 cases under section 1112 of the Bankruptcy Code or otherwise entered at any time, but subject to the Carve-Out in all respects, (x) the DIP Financing Liens, the Superpriority Claim, the 507(b) Claim, the Adequate Protection Liens, and the other administrative claims granted pursuant to this Final Order shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Financing Obligations and the Adequate Protection Obligations shall have been indefeasibly paid and satisfied in full in cash, as applicable, and (y) this Court shall retain jurisdiction to the maximum extent permitted under applicable law notwithstanding such dismissal for the purposes of enforcing the claims, liens and security interest referred to in clause (x) above.

(b)    If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect the validity, priority, or enforceability of the DIP Financing Liens, DIP Financing Obligations, the Adequate Protection Liens, any Adequate Protection Obligations, the 507(b) Claim, or the Superpriority Claims, incurred prior to the actual receipt of written notice by counsel to the Backstoppers and the DIP Financing Agents (with respect to the DIP Financing Obligations) and the counsel to the Backstoppers, Prepetition Administrative Agent, and the Prepetition Collateral Agent (with respect to the Adequate Protection Obligations) of the effective date of such reversal, stay, modification or vacatur.  Notwithstanding any such reversal, stay, modification or vacatur, any use of the Collateral (including the Cash Collateral), the DIP Financing Liens, or the Adequate Protection Obligations incurred by the Debtors hereunder, as the case may be, prior to

43

the actual receipt of written notice by counsel to the Backstoppers and the DIP Financing Agent (with respect to the DIP Financing Obligations) and the counsel to the Backstoppers, Prepetition Administrative Agent, and the Prepetition Collateral Agent (with respect to the Adequate Protection Obligations) of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Final Order, and the DIP Financing Lenders, the DIP Financing Agents, and the Adequate Protection Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in section 363(m) of the Bankruptcy Code with respect to all uses of the Collateral (including the Cash Collateral), all Adequate Protection Obligations, and the DIP Financing Obligations.

(c)    Except as expressly provided in this Final Order, and subject to the Carve-Out, the DIP Financing Liens and the Adequate Protection Liens and all other rights and remedies of the DIP Financing Lenders and the Adequate Protection Parties granted by the provisions of this Final Order shall survive, and shall not be modified, impaired or discharged by the entry of an order converting any of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of these chapter 11 cases. The terms and provisions of this Final Order shall continue in these chapter 11 cases and in any Successor Cases, and the DIP Financing Liens and the Adequate Protection Liens, the 507(b) Claim, the Superpriority Claim, and the other administrative claims granted pursuant to this Final Order, and all other rights and remedies of the DIP Financing Agents, the DIP Financing Lenders, the Disputed Mechanics' Lien Holders, and the Prepetition Secured Parties granted by the provisions of this Final Order shall continue in full force and effect.

44

20.    *Effect of Stipulations on Third Parties*.  The stipulations and admissions contained in this Final Order, including in Paragraph 5 hereof, shall be binding upon the Debtors and any successor thereto in all circumstances.  The stipulations and admissions contained in this Final Order, including in Paragraph 5 hereof, shall be binding upon all other parties in interest, including any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee"), unless (a) the Creditors' Committee, if any, or any other party in interest (including any Trustee), in each case, with requisite standing, has duly filed an adversary proceeding challenging the validity, enforceability, priority or extent of the Prepetition Obligations or the liens on the Collateral securing the Prepetition Obligations held by or on behalf of the Prepetition Secured Parties or otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Claims and Defenses") against the Prepetition Secured Parties in connection with any matter related to the Obligations or the Collateral by no later than the later of (i) seventy-five (75) days after the date of entry of the *Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting Adequate Protection to the Adequate Protection Parties, (C) Scheduling a Final Hearing, and (D) Granting Related Relief* [Docket No. 117], and (ii) any such later date agreed to in writing by each of the Backstoppers, the Prepetition Administrative Agent, and the Prepetition Collateral Agent in their respective sole and absolute discretion (the time period established by the later of the foregoing clauses (i) and (ii), the "Challenge Period"); provided, however, that in the event that, prior to the expiration of the Challenge Period, (x) these chapter 11 cases are converted to chapter 7 or (y) a chapter 11 trustee is appointed in these chapter 11 cases, then, in each such case, the Challenge Period shall be extended for a period of 60 days

45

commencing on the occurrence of either of the events described in the foregoing (x) and (y) and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding.  If no such adversary proceeding is timely filed prior to the expiration of the Challenge Period, without further order of this Court: (x) the Prepetition Obligations shall constitute allowed claims, not subject to any Claims and Defenses (whether characterized as a counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined by section 101(5) of the Bankruptcy Code), impairment, subordination (whether equitable, contractual or otherwise), or other challenge of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law, for all purposes in these chapter 11 cases and any subsequent chapter 7 case, if any; and (y) the Prepetition Obligations, the First Priority Prepetition Liens, and the Prepetition Lenders shall not be subject to any other or further challenge and any party in interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including any successor thereto (including any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period).  If any such adversary proceeding is timely filed prior to the expiration of the Challenge Period, the stipulations and admissions contained in this Final Order, including in Paragraph 5 hereof, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Creditors' Committee, if any, and any other Person (as defined in the Prepetition Credit Agreement) or party in these cases, including any Trustee, except as to any such findings and admissions that were expressly and successfully challenged in such

K&E 28496872.9

adversary proceeding. Nothing in this Final Order vests or confers on any Person, including a Creditors' Committee (if any) or Trustee, standing or authority to pursue any cause of action belonging to the Debtors or their estates.

21.     *Limitation on Charging Expenses Against Collateral.* Except to the extent of the Carve-Out, no expenses of administration of the Debtors' chapter 11 cases or any Successor Cases that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Financing Collateral or the Prepetition Collateral, as the case may be, pursuant to sections 105 and 506(c) of the Bankruptcy Code or any similar principle of law. Notwithstanding the foregoing or anything herein to the contrary, the Debtors' rights to surcharge the Disputed Mechanics' Liens Holders' interest in the Prepetition Collateral or the DIP Collateral (if any) are fully preserved, and, for the avoidance of doubt, the Disputed Mechanics' Lien Holders shall have no recourse to the proceeds of any action pursuant to section 506(c) of the Bankruptcy Code.

22.     *Limitations under Section 552(b) of the Bankruptcy Code.* The Prepetition Agent, the Prepetition Collateral Agent, the Prepetition Secured Parties, the DIP Financing Agents, and the DIP Financing Lenders shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Agent, the Prepetition Secured Parties, the DIP Financing Agents, and the DIP Financing Lenders with respect to (i) proceeds, products, offspring or profits of any of the Prepetition Collateral, including the Cash Collateral, or the DIP Financing Collateral, as applicable, or (ii) the extension of the Adequate Protection Liens to cover proceeds of the Prepetition Collateral.

23.    *Credit Bidding*.  The (a) DIP Financing Agents (as directed by the applicable DIP Financing Lenders pursuant to the DIP Financing Documents) shall have the unqualified right to credit bid up to the full amount of any remaining DIP Financing Obligations in the sale of any of the Debtors' assets, including pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code and (b) subject to the indefeasible payment in full in cash of the DIP Financing Obligations, the Prepetition Collateral Agent and the Prepetition Administrative Agent (as directed under the applicable documents) shall have the right to use, in their respective order of priority, the Prepetition Obligations and the Adequate Protection Obligations to credit bid in the sale of any of the Debtors' assets, including pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code. For the avoidance of doubt, the proceeds of any such credit bid shall be apportioned in accordance with the Prepetition Loan Documents and the J. Aron Swap Agreements.   In consideration of the DIP Financing Loans and as additional adequate protection to the Prepetition Secured Parties, it shall be an Event of Default for any of the DIP Financing Agents or the Prepetition Secured Parties to not be allowed the right to credit bid their respective DIP Financing Obligations or Prepetition Obligations.

K&E 28496872.9

24. *Marshaling.* None of the DIP Financing Collateral, the Prepetition Collateral, the DIP Financing Lenders, the DIP Financing Agents or the Prepetition Lenders shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine.

25. *Information and Other Covenants.* The Debtors shall comply with the reporting requirements set forth in the DIP Financing Agreement and the Prepetition Credit Agreement. The Debtors shall maintain their cash management arrangements in a manner consistent with that described in Cash Management Motion and any successor or final orders with respect thereto.

26. *Disputed Mechanics' Liens; Reservation of Rights.* Certain mechanics' liens (collectively, the "Disputed Mechanics' Liens") have been filed by Kvaerner North American Construction, Inc. ("Kvaerner"), Siemens Energy, Inc. ("Siemens") and Foster Wheeler North America Corp. ("Foster Wheeler", and together with Siemens and Kvaerner, the "Disputed Mechanics' Lien Holders") against certain interests of the Debtors in and to certain real property and assets located in the Cass District, in the county of Monongalia, West Virginia. For the avoidance of doubt, and notwithstanding anything in this Final Order to the contrary, nothing in the Final Order shall be construed to grant the Disputed Mechanics' Lien Holders the benefits of any of the Debtors' stipulations in this Final Order, and the Disputed Mechanics' Lien Holders shall not be construed to be Prepetition Secured Parties or Adequate Protection Parties in any way other than to the extent the Disputed Mechanics' Lien Holders are determined by this Court or any other court or legal forum of competent jurisdiction to have a valid, perfected, and secured interest in the Prepetition Collateral entitled to adequate protection. The Debtors and all other parties reserve all rights to challenge the validity, perfection, priority, and enforceability of the Disputed Mechanics' Liens or any claims related thereto in all respects.

49

27.    *Indemnification.*  The Debtors shall indemnify the Prepetition Secured Parties, the DIP Financing Agents and the DIP Financing Lenders and their respective affiliates, successors and assigns and the officers, directors, employees, agents, advisors, controlling persons and members of each of the foregoing (each, an "Indemnified Person") and hold each of them harmless from and against all costs, expenses (including reasonable fees, disbursements and other charges of counsel) and liabilities of such Indemnified Person arising out of or relating to any claim or any litigation or other proceeding (regardless of whether such Indemnified Person is a party thereto and regardless of whether such matter is initiated by a third party or by the Debtors or any of their affiliates or shareholders) that relates to the DIP Financing Documents or this Final Order, including the financial accommodations to the Debtors contemplated hereby, the Debtors' chapter 11 cases, or any transactions in connection therewith; provided that no Indemnified Person will be indemnified for any cost, expense or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct, bad faith or material breach of the Indemnified Person's obligations under the DIP Financing Documents or this Final Order; provided that, except with respect to claims brought by third parties against the Backstoppers, under no circumstances shall the Debtors be liable to any Backstopper for any punitive, exemplary, consequential or indirect damages which may be alleged to result in connection with the DIP Facility or the DIP Financing Documents.  Nothing herein is meant to limit the scope of any indemnity provided for the benefit of the DIP Financing Agents or the DIP Financing Lenders in the DIP Financing Documents.  For the avoidance of doubt, this Paragraph 27 does not apply or otherwise affect any indemnification rights or

K&E 28496872.9

obligations in respect of the Prepetition Secured Parties under the Prepetition Loan Documents or the J. Aron Swap Agreements.

28.    *Limitation on Use of the DIP Financing Loans, the DIP Financing Collateral, the Prepetition Collateral (Including the Cash Collateral).*  The Debtors shall use the DIP Financing Loans and the Prepetition Collateral, including the Cash Collateral, solely as provided in this Final Order, the Budget, and the DIP Financing Documents; provided that it is acknowledged and agreed that obligations benefitting from the Carve-Out shall in no way be subject to the Budget.  Notwithstanding anything herein or in any other order of this Court to the contrary, neither the DIP Financing Loans, the DIP Financing Collateral, the Prepetition Collateral, including the Cash Collateral, nor the Carve-Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Financing Documents, the Prepetition Loan Documents, the J. Aron Swap Agreements or the liens or claims granted under this Final Order, the DIP Financing Documents, the Prepetition Loan Documents, or the J. Aron Swap Agreements, (b) assert any Claims and Defenses or any other causes of action against the DIP Financing Agents, the DIP Financing Lenders, the Prepetition Administrative Agent, the Prepetition Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Financing Agents' or the Prepetition Administrative Agent's assertion, enforcement or realization on the Prepetition Collateral or the DIP Financing Collateral in accordance with the DIP Financing Documents, the Prepetition Loan Documents or this Final Order, (d) seek to modify any of the rights granted to the DIP Financing Agents, the DIP Financing Lenders, the Prepetition Administrative Agent or the Prepetition Lenders

K&E 28496872.9

hereunder or under the DIP Financing Documents or the Prepetition Loan Documents, in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) permitted under the DIP Financing Documents and the Budget; provided that, notwithstanding anything to the contrary herein, the Debtors shall not be authorized to use Cash Collateral to pay fees or expenses, (x) in excess of an amount $20,000 per month (a "Committee Monthly Cap"), on account of Professional Persons retained by any Creditors' Committee (y) in excess of $20,000 (the "Investigation Budget") for the Creditors' Committee, if any, to investigate Claims and Defenses against the Prepetition Secured Parties before the termination of the Challenge Period (as defined herein), or (z) to initiate or prosecute proceedings or actions on account of any Claims or Defenses against the Prepetition Secured Parties

29.     *Binding Effect; Successors and Assigns.*  The provisions of this Final Order, the DIP Financing Agreement, the other DIP Financing Documents shall be binding upon all parties in interest in the Debtors' chapter 11 cases and any Successor Cases, including the Prepetition Secured Parties, any Creditors' Committee, the Debtors and their respective successors and assigns (including any Trustee hereinafter appointed or elected for the estates of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors).

30.     *Limitation of Liability.*  In determining to make any loan under the DIP Financing Agreement, permitting the use of Cash Collateral, or in exercising any rights or remedies as and

K&E 28496872.9

when permitted pursuant to this Order, the DIP Financing Documents, the Prepetition Loan Documents, or the J. Aron Swap Agreements, the DIP Financing Agents, the DIP Financing Lenders, the Prepetition Agent and the Prepetition Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute). Furthermore, nothing in this Final Order, the DIP Financing Documents, the Prepetition Loan Documents, or the J. Aron Swap Agreements shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Financing Agents, the DIP Financing Lenders, or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

31.     *Agent Account.*  The amounts in the Agent Account are property of the Prepetition Secured Parties (other than J. Aron), do not constitute Cash Collateral or Prepetition Collateral of any kind, and are not property of the Debtors' estates; further, the determination at any time of whether to access the funds in the Agent Account is in the sole discretion of the Prepetition Administrative Agent, acting at the direction of the Backstoppers (and for the avoidance of doubt, the Prepetition Administrative Agent, acting at the direction of the Backstoppers, shall be entitled at any time to access such funds and distribute same in accordance with the Intercreditor Agreement and the Prepetition Loan Documents, without any further notice, hearing or order), and the Debtors do not have any rights with regard thereto, or with regards to the Agent Account whatsoever.

K&E 28496872.9

32.     *Termination of Synthetic L/C Facility.*   The Debtors are authorized to terminate the Synthetic L/C Facility (as defined in the Prepetition Credit Agreement) so as (i) to permit cash held in the Synthetic L/C Deposit Account (as defined in the Prepetition Credit Agreement) in excess of Synthetic L/C Exposure (as defined in the Prepetition Credit Agreement) to be returned to the Prepetition Lenders in accordance with the terms of the Prepetition Credit Agreement and (ii) to permit cash otherwise collateralizing Synthetic Letters of Credit (as defined in the Prepetition Credit Agreement) to be returned to the Prepetition Lenders in accordance with the terms of the Prepetition Credit Agreement as such Synthetic Letters of Credit are reissued or replaced with letters of credit issued under the Letter of Credit Facility.

33.     *Rights Reserved.*   Notwithstanding anything herein to the contrary, but subject to Paragraphs 10, 12, and 13(d) hereof with respect to the Disputed Mechanics' Liens only, no term or provision of this Final Order or the Budget shall prejudice the rights or interests of any party in interest with respect to the Intercreditor Agreement, the Arbitration, the Disputed Mechanics' Liens, the Foster Wheeler L/Cs or the rights of offset or recoupment of any party.

34.     *Employee Plans.*   For the avoidance of doubt, and notwithstanding anything herein to the contrary, nothing herein authorizes or shall be deemed to authorize the Debtors to make payments under any "Key Employee Incentive Plan" or "Key Employee Retention Plan" other than with respect to any such payments that have been previously authorized by this Court (including pursuant to the *Order (A) Authorizing and Approving the Debtors' Key Employee Retention Program for Certain Non-Insider Employees and (B) Granting Related Relief,* entered on October 29, 2013 [Docket No. 377]), and if the Debtors seek authority to make any such

payments other than those that have been previously authorized by this Court, the Debtors shall seek such authority by separate motion.

35.    *Effectiveness.*  This Final Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of effectiveness of this Final Order.  To the extent that any finding of fact shall be determined to be a conclusion of law it shall be so deemed and vice versa.

36.    *Controlling Effects of Final Order.*  To the extent any provision of this Final Order conflicts or is inconsistent with any provision of the Motion or the DIP Financing Agreement, the provisions of this Final Order shall control.

37.    *Jurisdiction.*  This Court shall retain jurisdiction to enforce the terms of this Final Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Final Order.

38.    *Immediately Effective.*  This Final Order is hereby deemed effective immediately pursuant to Rule 6004(h) Federal Bankruptcy Rules of Procedure.

Dated: ___ ___ 21 , 2013
      Wilmington, Delaware

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

55