## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LONGVIEW POWER, LLC, *et al.*, | Case No. 13-12211 (BLS) |
| Debtors. | **Jointly Administered** |
| | **Re: Docket No. 1026** |
| | **Hearing Date: April 28, 2014, at 10:00 a.m. EST**<br>**Objection Deadline: March 26, 2014, at 4:00 p.m. EST** |

### OBJECTION OF KVAERNER NORTH AMERICAN CONSTRUCTION INC. TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) FURTHER EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (B) GRANTING RELATED RELIEF

Kvaerner North American Construction Inc. ("Kvaerner"), [1] by and through its undersigned counsel, hereby objects to the Debtors' Motion for Entry of an Order (A) Further Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (B) Granting Related Relief (the "Second Exclusivity Motion") [Docket No. 1026].

### PRELIMINARY STATEMENT

1.      After the Debtors and Backstoppers repeatedly expressed that reorganization in these cases must be accomplished quickly and that any other timetable is unworkable, through their Second Exclusivity Motion, the Debtors seek to further prolong the timeframe for their alleged time-sensitive reorganization. The Debtors' Second Exclusivity Motion is at odds with the Debtors' and Backstoppers' insistence that these cases must be resolved through their

---

[1] All capitalized terms not otherwise defined herein have the same meaning as ascribed to them in the Second Exclusivity Motion.

Disputed Mechanics' Lien Claims Resolution procedure (i.e., their "estimation" motion and the contractual partial lien waiver adversary proceeding) under a highly expedited – yet continually adjourned – time table.  Unlike in the First Exclusivity Motion, wherein the Debtors' expressed a continued intention to meet the milestones contained in their DIP Credit Agreement and Plan, the Debtors have now abandoned the milestones.

2.      After an initial extension of the exclusivity period and failure to accomplish the Disputed Mechanics' Lien Claim Resolution procedure, the Plan filed by the Debtors has proved unworkable.  The Court should deny the Debtors' Second Exclusivity Motion and allow other parties to propose plans of reorganization for these chapter 11 cases, unless the Debtors and Backstoppers are sincere about a new direction.  Simply put, if the old plan and its unrealistic and failed time table is not withdrawn, then other parties ought to be free to propose a viable alternative.  On the other hand, if the Debtors and Backstoppers come clean and withdraw their defunct plan and agree to propose a realistic plan which does not include their failed Disputed Mechanics' Lien Claims Resolution procedure, then their request for continued exclusivity has some merit.

## FACTUAL BACKGROUND

3.      On August 30, 2013 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Court held a hearing on September 3, 2013 to consider the Debtors' first day motions (the "First Day Hearing").  On September 4, 2013, the Court entered an order directing the joint administration of these cases [Docket No. 95] under the above-captioned lead case number.  A committee of unsecured creditors has not been appointed in these cases [Docket No. 163].

4.      The Debtors' Senior Secured Superpriority Debtor-In-Possession Credit Agreement [Docket Nos. 470 & 501], originally filed on November 15, 2013 and amended on November 20, 2013, contains milestones to resolve these cases that the Debtors are required to meet.  DIP Credit Agreement § 5.25.  One such milestone is that the Debtors must (and did) file an estimation motion by December 11, 2013 and must commence a hearing with regard to the estimation motion on or before February 8, 2014.  *Id.*  The milestones call for the consummation and approval of a plan by March 7, 2014.  *Id.*  Pursuant to the DIP Credit Agreement the failure to meet the milestones, which include an estimation by the Court of Kvaerner's mechanic's lien claims as $0.00 or subordination of the mechanic's liens to the prepetition lenders' claims under the prepetition credit agreement, and to achieve the effective date of the Plan by March 7, 2014, constitute events of default.  *See id.* §§ 7.03(q)(xi), 5.25(i).

5.      The Debtors' Joint Plan of Reorganization (the "Plan") [Docket Nos. 442, 443 & 671], originally filed on November 13, 2013 and amended on December 19, 2013, calls for a "Disputed Mechanics' Lien Claims Resolution" process which requires: (a) that the Court estimate the Contractors' Disputed Mechanics' Lien Claims "not to exceed $0.00 in the aggregate after accounting for any defect claims, damages, counterclaims, or any other Causes of Action," or (b) that the Contractors' Disputed Mechanics' Lien Claims "be junior to the Longview Credit Agreement Claims in their entirety."  Plan Art. I.A.44. The Plan provides that the Disputed Mechanics' Liens Claims Resolution is a condition precedent to Plan confirmation and an exit from bankruptcy.  Plan Arts. VII.C, IX.A.  Confirmation of the Plan now has been adjourned twice, the first time to March 10, 2014 [Docket Nos. 781 & 784], and on February 21, 2014 for the second time, when the Debtors adjourned the Plan Confirmation hearing to a date to

3

be determined [Docket No. 935].  The Plan Confirmation Schedule remains undetermined at this time.

6.      The Debtors' motion for approval of a key employee incentive plan[2] [Docket No. 538] describes the Plan and DIP Credit Agreement milestones as "tied to achieving what the Debtors and the Backstoppers have agreed is the urgent task at hand: emerging from these chapter 11 cases as quickly and efficiently as possible."   KEIP Motion ¶ 6.  As the Court is aware, the KEIP performance targets are the same as the milestones set forth in the DIP Credit Agreement and contemplated by the Plan.

7.      At the December 18, 2013 hearing on the KEIP Motion, the Debtors and the Backstoppers fiercely defended the Plan and performance target milestones as essential the Debtors' reorganization.   The Debtors and the Backstoppers characterized the milestones as difficult-to-reach, yet important drivers of the chapter 11 cases. *See* Tr. (Dec. 18, 2013) 58-109. The Debtors and Backstoppers argued that accomplishing reorganization within the timetable laid out by the milestones is necessary because remaining in chapter 11 is financially harmful to the Debtors.  *Id.* 103, 138.  In the words of counsel for the Backstoppers:  "These are real milestones, because they have real economic factors that go with them."  *Id.* 105.

8.      On December 11, 2013, Longview commenced an adversary proceeding against Kvaerner, along with Siemens Energy, Inc. ("Siemens"), seeking a judgment "reducing and determining the maximum possible extent" of Kvaerner's and Siemens' mechanic's liens. Compl. ¶ 2, *Longview Power, LLC v. Kvaerner North American Construction, Inc., et al.*, No. 13-52531-BLS (Bankr. D. Del) [Adversary Proceeding Docket No. 1].  Concurrently with the

_____

[2] Debtors' Motion for Entry of an Order (A) Authorizing and Approving the Debtors' Key Employee Incentive Plan and (B) Granting Related Relief (the "KEIP Motion").

Adversary Proceeding complaint, Longview filed a motion for summary judgment [3] and accompanying brief [4] alleging that Kvaerner waived numerous claims and asserts non-lienable claims. Kvaerner filed a Motion to Dismiss Complaint [Adversary Proceeding Docket No. 17] in the adversary proceeding on January 10, 2014. At this point, the motion for summary judgment and motion to dismiss have been fully briefed, but no hearing on either motion has been scheduled.

9.      The Debtor Longview Power, LLC's ("Longview") Claims Estimation Motion [5] [Docket No. 582], filed on December 11, 2013, urges that the Debtors and Backstoppers want to "emerge from chapter 11 as expeditiously as possible," and that estimation of the Contractors' mechanic's lien claims on an expedited timetable, by February 11, 2014, was not only possible, but necessary for consummation of the Plan. Claims Estimation Motion 1-2, 3, 36-40. At a status conference held on January 15, 2014, the Court ordered that only the legal gating issues related to the estimation process be heard at the February 7, 2014. Hr'g Tr. 13:14-18, 21:4-9 (Jan. 15, 2014). On February 7 & 12, 2014, just moments before the hearing was to commence, Longview requested, over Kvaerner's objection, that the Court adjourn the hearing on the gating issues to permit Longview and Foster Wheeler to seek authorization under Rule 9019 to enter into their recently consummated Settlement Agreement. The Court granted that request and further ruled that the Claims Estimation Hearing would not be rescheduled until after the

---

[3] Longview Power LLC's Motion for Summary Judgment Reducing the Maximum Potential Extent of the Mechanics' Liens [Adversary Proceeding Docket No. 3].

[4] Longview Power LLC's Brief in Support of Motion for Summary Judgment Reducing Maximum Potential Extent of Mechanics' Liens [Adversary Proceeding Docket No. 4].

[5] Longview Power, LLC's Motion for Entry of an Order (A) Estimating the Claims of Kvaerner North American Construction, Inc., Siemens Energy, Inc. and Foster Wheeler North America Corp. in the Amount of Zero Dollars and (B) Granting Related Relief ("Claims Estimation Motion").

anticipated motion for approval to enter into the Settlement Agreement had been fully resolved. Thus, at this time, any hearing on the Estimation Motion is indefinitely continued.

10.    The Debtors filed their first motion to extend the period of exclusivity[6] ("First Exclusivity Motion") on December 27, 2013.  Kvaerner filed an objection to the First Exclusivity Motion,[7] which Kvaerner withdrew after the Debtors agreed to continue the confirmation deadlines and the hearing for a short time period.[8]  The Court ordered extension of the exclusivity period through and including March 14, 2014.[9]

11.    On February 11, 2014, the Debtors filed a Motion Pursuant to Bankruptcy Rule 9019 and Bankruptcy Code Sections 364(b) and (e) For an Order Authorizing Settlement Between Longview Power, LLC and Foster Wheeler North America Corp. (the "9019 Motion") [Docket No. 902].  At the hearing on March 4, 2014, the Court approved the settlement between Longview Power and Foster Wheeler and overruled the objections of Kvaerner and Siemens to the settlement.  Hr'g Tr. 172:8-9 (Mar. 4, 2014).  The Court signed an Order[10] authorizing the settlement on March 6, 2014.

12.    The Debtors filed their Second Exclusivity Motion on March 12, 2014.  The deadline for the filing of objections to the Second Exclusivity Motion is March 26, 2014.  The

---

[6] Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement [Docket No. 704].

[7] Objection of Kvaerner North American Construction Inc. to Debtors' Motion for Entry of an Order (A) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (B) Granting Related Relief (the "Objection to First Exclusivity Motion") [Docket No. 723].

[8] *See* Notice of Withdrawal of Objection of Kvaerner North American Construction Inc. to Debtors' Motion for Entry of an Order (A) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (B) Granting Related Relief [Docket No. 791].

[9] Order (A) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (B) Granting Related Relief [Docket No. 794].

[10] Order Authorizing Settlement Between Longview Power, LLC and Foster Wheeler North America Corp. [Docket No. 1018].

hearing on the Second Exclusivity Motion is April 28, 2014.  By filing the Second Exclusivity Motion a mere nine days after March 3, 2014 – the date by which the Debtors had to file and provide notice of motions to be heard at the hearing scheduled for March 24, 2014 – and just two days short of the end of their first extension of the exclusivity period on March 14, 2014, the Debtors effectively have already further extended the exclusivity period by a month-and-a-half.

## **OBJECTION**

13.      Section 1121 of the Bankruptcy Code provides that a debtor has the exclusive right to file a plan for reorganization within the first 120 days of a chapter 11 case.  11 U.S.C. § 1121(b).  Where a debtor has filed a plan that has not been accepted, the debtor is afforded an additional 60 days before a competing plan may be filed.  *Id.* § 1121(c)(3).  The Court may extend the applicable period in which the debtor may file a plan "for cause" after notice and a hearing.  *Id.* § 1121(d).

14.      A "debtor must make a clear showing of 'cause' to support an extension of the exclusivity period" for filing a plan of reorganization.  *In re Curry Corp.*, 148 B.R. 754, 756 (Bankr. S.D.N.Y. 1992).  Courts have interpreted the Bankruptcy Code's directive that a court "may" extend the exclusivity period to grant "great latitude to the bankruptcy Judge in deciding, on a case-specific basis, whether to modify the exclusivity period." *In re Geriatrics Nursing Home, Inc.*, 187 B.R. 128, 132 (D.N.J. 1995); *see In re Sharon Steel Corp.*, 78 B.R. 762, 763 (Bankr. W.D. Pa. 1987).  Since cause is not defined by the Bankruptcy Code, courts consider *non-exclusive* factors, including the following:

(a)      the size and complexity of the case;

(b)      the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

(c)     the existence of good faith progress toward reorganization;

(d)     the fact that the debtor is paying its bills as they become due;

(e)     whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(f)     whether the debtor has made progress in negotiations with its creditors;

(g)     the amount of time which has elapsed in the case;

(h)     whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

(i)     whether an unresolved contingency exists.

*In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006).

15.     Section 1121 is best interpreted "to limit the delay that makes creditors the hostages of Chapter 11 debtors." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs. Ltd.)*, 808 F.2d 363, 372 (5th Cir. 1987), *aff'd* 484 U.S. 365 (1988); *In re Borders Group, Inc.*, 460 B.R. 818, 825 (Bankr. S.D.N.Y 2011). The size of a debtor's operations cannot alone warrant an extension of the exclusivity period. *In re Curry Corp.*, 148 B.R. at 756.

16.     "[T]he legislative history accompanying 11 U.S.C. § 1121 indicates that the plan exclusivity provisions should not be employed as a tactical device to put pressure on parties to yield to a plan they consider unsatisfactory," or to "accede to the debtor's point of view on a critical issue." *In re Geriatrics Nursing Home, Inc.*, 187 B.R. at 132 (citing *In re Texaco, Inc.*, 81 B.R. 806, 812 (Bankr. S.D.N.Y. 1988)); *In Matter of Excel Maritime Carriers Ltd.*, 2013 WL 5155040, at *2 (Bankr. S.D.N.Y. Sept. 13, 2013). In deciding "to change the pre-Code scheme of unlimited exclusivity for the debtor," Congress "'recognize[d] the legitimate interests of creditors, whose money is in the enterprise as much as the debtor's, to have a say in the future of

8

the company.'" *In re Lehigh Valley Prof'l Sports Club, Inc.*, 2000 WL 290187, at *3 (Bankr. E.D. Pa. Mar. 14, 2000) (quoting H.R.Rep. No. 595, 95th Cong., 1st sess. 402, 231-32 (1977)). Congress acknowledged that the formerly unlimited period of exclusivity provided debtors "undue bargaining leverage, because by delay, [they could] force a settlement out of otherwise unwilling creditors." *Id.* (quoting *Matter of All Seasons Indus.*, 121 B.R. 1002, 1004 (Bankr. N.D. Ind. 1990)).

17.    To fulfill a showing of cause for why the Court should grant an extension of the exclusivity period, the Debtors point to the progress they have made in these chapter 11 cases by filing the Plan, obtaining DIP financing and entering settlements with FirstEnergy and Foster Wheeler.   Second Exclusivity Motion ¶ 12.   A notable difference from the First Exclusivity Motion is that the Debtors did not cite filing the Claims Estimation Motion and Adversary Proceeding as demonstrative of progress toward exiting chapter 11.   *See* First Exclusivity Motion ¶ 6.   The Debtors have apparently chosen to ignore these two time consuming efforts they have left on hold because the nature of those pleadings is at odds with their current request for an extension.

18.    From the inception of these chapter 11 proceedings, the Debtors have cited a need to quickly exit chapter 11 as the rationale for seeking much relief on expedited bases.   It has become a typical routine for the Debtors file a motion seeking for relief that impacts Kvaerner's rights, purporting it needs to be addressed right away and launching into briefing, only to postpone hearings and leave the issues cast aside while the Debtors formulate and implement new strategies.   This has been the case for the Debtors' Cash Collateral Motion,[11] which was

---

[11] *See* Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting Adequate Protection to the Adequate Protection Parties, (C) Scheduling a Final Hearing

twice adjourned before the Debtors filed their DIP Motion and entered the Lift Stay Stipulation,[12] and the Estimation Motion, which remains unscheduled for a hearing, despite being fully briefed.  Additionally, as mentioned above, a summary judgment motion and motion to dismiss remain fully briefed and unscheduled for a hearing in the Adversary Proceeding.  The aforementioned proceedings came after the Debtors spent the first three months of this case fighting with the Contractors over the Foster Wheeler letters of credit and the Contractors' lift stay motions.  At least when it comes to matters affecting the rights of Kvaerner, any progress the Debtors have made toward exiting chapter 11 has come at great expense of time, effort, and cost to Kvaerner, accomplished in crunched timeframes as a result of pressures imposed by the Debtors due to a purported, but unsubstantiated, need to reach confirmation quickly.

19.    After championing the magnitude and importance of the DIP milestones, which are incorporated into the Plan, to preserve the value of the Debtors' estates, with the adjournment of confirmation and the Estimation Motion, the Debtors have more or less abandoned the schedule of milestones and any vision of reorganization embodied by the Plan.  The Debtors' statement that they are refining the Plan makes evident their knowledge that the Plan is unworkable.  Second Exclusivity Motion ¶ 12.  The Debtors have not withdrawn the Plan or the Estimation Motion, and they have not engaged in any activity in the Adversary Proceeding. There is no clear indication of a direction for reorganization of the Debtors.  Now the Debtors seek a second extension of the exclusivity period.

---

Pursuant to Bankruptcy Rule 4001(b), and (D) Granting Related Relief (the "Cash Collateral Motion") [Docket No. 25].

[12] Order Authorizing and Approving Stipulation Between Debtors, Agent, Steering Committee, Backstoppers and Contractors (I) Modifying and Lifting the Automatic Stays Under 11 U.S.C. § 362 to Permit the Arbitration to Proceed as to All Issues Other than Issues Related to the Foster Wheeler LCs, (II) Requiring Foster Wheeler to Extend the Expiration Date of the Foster Wheeler LCs to June 30, 2014, (III) Staying the LC Pleadings Without Prejudice, and (IV) Prohibiting the Debtors From Demanding and Drawing on the Foster Wheeler LCs Until Further Order of the Court, Exhibit 1 [Docket No. 463-1].

20.    While the need for a new or revised plan can hardly be disputed, the Debtors should not be granted an extension of exclusivity unless they admit that need and abandon the unworkable plan that is currently on file.  Whereas a grant of exclusivity is warranted where a debtor can show, among other things, good faith progress toward reorganization,[13] the Debtors should not receive an extension if they are only seeking a further extension to rework their efforts in their unending campaign to suppress Kvaerner's rights, notwithstanding admonishment from the Court that the Debtors are in the business of making power, not litigation.[14]  Quite plainly, if the Debtors are ready to move forward and abandon their failed campaign, then their request for an additional extension is warranted.

21.    Even under such scenario, however, significant reworking of the Plan would require that the Debtors issue a new disclosure statement and solicit the Plan over again.  *See* 11 U.S.C. § 1125 (setting forth that the disclosure statement must contain information adequate to enable a claimant to make an informed decision in voting upon acceptance of a plan and a party soliciting a plan must comply with all the provisions of title 11); Fed. R. Bankr. P. 3016(b).  If, however, the Debtors are intent on rehashing their failed strategy then it is time to allow others to have a voice and propose a viable alternative.  Thus far, the Debtors have forced Kvaerner into a position where it must defend its rights, only for the Debtors to retreat and reconfigure their strategies, rendering Kvaerner a hostage of the Debtors' exclusivity, subject to seemingly endless litigation, while Kvaerner seeks only to continue the Arbitration and have its mechanic's liens pass through the bankruptcy proceedings and remain intact through the conclusion of the

---

[13] *In re Adelphia*, 352 B.R. at 587.

[14] Status Conference Tr. 23:14-20 (Jan. 15, 2014) ("We [have] got a debtor with a business whose business is not litigation but creating power and running a business.").

4831-0298-1401\2

Arbitration.[15]   Moreover, with the Plan and associated milestones being cast aside, the Debtors have demonstrated no prospects that the current Plan is a viable plan of reorganization.

22.     In its objection to the First Exclusivity Motion, Kvaerner argued that if the Debtors did "not have an alternative plan and in the end are unable to implement the current Plan they have envisioned, then they should not reap further control of the plan process, and other parties in interest should then be given the opportunity to file a workable plan of reorganization." Objection to First Exclusivity Motion ¶ 18.  In light of the present circumstance that the current Plan is unworkable, Kvaerner reiterates that the Court ought not grant the Debtors continued control over the plan process unless and until they agree to abandon what has clearly failed on its own terms.

## **CONCLUSION**

23.     For the foregoing reasons, Kvaerner respectfully requests that this Court enter an Order denying the Second Exclusivity Motion.


[Signatures to follow.]

---

[15] *See* Kvaerner North American Construction Inc.'s Objection and Reservation of Rights to Longview Power, LLC's Motion for Entry of Order (A) Estimating the Claims of Kvaerner North American Construction Inc., Siemens Energy, Inc. and Foster Wheeler North America Corp. in the Amount of Zero Dollars and (B) Granting Related Relief [Docket No. 723], at 1; Kvaerner North American Construction Inc.'s Omnibus Sur-Reply In Opposition to Longview Power, LLC's Motion for Entry of Order (A) Estimating the Claims of Kvaerner North American Construction Inc., Siemens Energy, Inc. and Foster Wheeler North America Corp. in the Amount of Zero Dollars and (B) Granting Related Relief [Docket No. 855], at n. 13.

Dated:  March 26, 2014

DORSEY & WHITNEY (DELAWARE) LLP

/s/  Eric Lopez Schnabel
Eric Lopez Schnabel (DE Bar No. 3672)
Robert W. Mallard (DE Bar No. 4279)
Alessandra Glorioso (DE Bar No. 5757)
300 Delaware Avenue, Suite 1010
Wilmington, Delaware 19801
Telephone: (302) 425-7171
Facsimile: (302) 425-7177
E-mail:  schnabel.eric@dorsey.com
               mallard.robert@dorsey.com
               glorioso.alessandra@dorsey.com

DORSEY & WHITNEY LLP

William G. Primps, Esq.
Eric Lopez Schnabel, Esq.
51 West 52nd Street
New York, New York 10019
Telephone: (212) 415-9200
Facsimile: (212) 953-7201

Jocelyn L. Knoll, Esq.
Eric Ruzicka, Esq.
50 South Sixth Street
Minneapolis, Minnesota 55402
Telephone: (612) 492-6622
Facsimile: (212) 953-7201

*Attorneys for Kvaerner North American
Construction Inc.*