## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LONGVIEW POWER, LLC, *et al.*, | Case No. 13-12211 (BLS) |
| Debtors. | **Jointly Administered** |
| | **Re: Docket Nos. 1139, 1145** |
| | **Hearing Date: May 29, 2014, at 10:00 a.m. EST**<br>**Objection Deadline: May 22, 2014, at 4:00 p.m. EST** |

**OBJECTION OF KVAERNER NORTH AMERICAN CONSTRUCTION INC.
TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) APPROVING
THE DEBTORS' CONTINUED SOLICITATION OF THE AMENDED PLAN AND
THE ADEQUACY OF THE SUPPLEMENTAL DISCLOSURE IN
CONNECTION THEREWITH, (B) ESTABLISHING CERTAIN DEADLINES
AND PROCEDURES IN CONNECTION WITH PLAN CONFIRMATION,
AND (C) GRANTING RELATED RELIEF**

Kvaerner North American Construction Inc. ("Kvaerner"), [1] by and through its undersigned counsel, hereby objects (the "Objection") to the Debtors' Motion for Entry of an Order (A) Approving the Debtors' Continued Solicitation of the Amended Plan and the Adequacy of the Supplemental Disclosure in Connection Therewith, (B) Establishing Certain Deadlines and Procedures in Connection with Plan Confirmation, and (C) Granting Related Relief (the "Continued Solicitation Motion") [Docket No. 1145]. In support of this Objection, Kvaerner states as follows:

### PRELIMINARY STATEMENT

1. The Amended Plan is clearly a new plan. The sole question remains whether or not such new plan is simply window dressing on the same failed strategy as with the Original

---

[1] All capitalized terms not otherwise defined herein have the same meaning as ascribed to them in the Continued Solicitation Motion.

Plan.  The Original Plan provided that under certain conditions Kvaerner would receive cash in full satisfaction of its senior secured claim.  The Amended Plan basically says the same thing – perhaps less appealing than cash:  under certain conditions Kvaerner will receive cash from an insurance trust or a note with unknown terms.

2.      Is this new "amended" plan better or is it the same failed attempt as the previous plan, except with new, more creative window dressing?  The answer to this question cannot be determined at this time because the Disclosure Supplement fails to contain adequate information for Kvaerner (and thus, other creditors) to understand what the Amended Plan seeks to accomplish and how it will set out to do it.  Unless and until the Disclosure Supplement is substantially amended to address and resolve these numerous unknowns, this Court should not approve the Continued Solicitation Motion.

## FACTUAL BACKGROUND

3.      On August 30, 2012 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  On September 4, 2013, the Court entered an order directing the joint administration of these cases [Docket No. 95] under the above-captioned lead case number.  A committee of unsecured creditors has not been appointed in these cases [Docket No. 163].

**I.      The DIP Order and Credit Agreement**

4.      On November 1, 2013, Longview filed its Motion to Approve Debtor in Possession Financing (the "DIP Motion") [Docket No. 392].  In connection with the DIP Motion, the Debtors filed the Senior Secured Superpriority Debtor-In-Possession Credit Agreement on November 15, 2013, as amended on November 20, 2013 (the "Credit Agreement") [Docket Nos.

2

470 & 501]. The Credit Agreement required the Debtors to meet certain milestones to resolve these cases. Credit Agreement § 5.25. One such milestone required the Debtors to file a motion to estimate Kvaerner's and the other Contractors' mechanics' lien claims (the "Estimation Motion") by December 11, 2013 and commence a hearing on the Estimation Motion (the "Estimation Proceedings") on or before February 8, 2014. *Id.* The milestones further called for the consummation and approval of a plan by March 7, 2014. *Id.* The failure to meet these milestones constituted events of default under the Credit Agreement. *See id.* §§ 7.03(q)(xi), 5.25(i).

5.     The Debtors have amended the Credit Agreement twice. First, on January 10, 2014, the Debtors entered into Amendment No. 1, and again, on March 21, 2014, the Debtors entered into Amendment No. 2 further extending the deadlines set forth in the Credit Agreement.

## II.     The Debtors' First Motion to Solicit the Original Plan and Disclosure Statement

6.     On November 13, 2013, the Debtors filed the Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (the "Original Plan") and the Disclosure Statement for the Plan (the "Disclosure Statement") [Docket Nos. 442 & 443]. Longview filed an amended version of the Original Plan on December 19, 2013 [Docket No. 671] and an amended Disclosure Statement on December 20, 2013 [Docket No. 672].

7.     The Original Plan contained as material terms many of the terms and milestones required in the Credit Agreement. Thus, the Debtors made the "Disputed Mechanics' Lien Claims Resolution" process the keystone of the Original Plan. *See* Original Plan Art. I.A.44. The Disputed Mechanics' Lien Claims Resolution process required (a) that the Court estimate the Contractors' Disputed Mechanics' Lien Claims "not to exceed $0.00 in the aggregate after accounting for any defect claims, damages, counterclaims, or any other Causes of Action," or (b)

3

that the Contractors' Disputed Mechanics' Lien Claims "be junior to the Longview Credit Agreement Claims[2] in their entirety." *See id*. The Disputed Mechanics' Lien Resolution was a condition precedent to confirmation and the effective date of the Original Plan, subject only to the Backstoppers' approvals. Original Plan Arts. VII.C, IX.A.

8.      On December 18, 2013, the Court entered the Solicitation Order[3] which approved the Disclosure Statement as containing adequate information and authorized solicitation of the Original Plan. The Solicitation Order provided that the voting and plan objection deadlines would occur on January 27, 2014 and the Confirmation Hearing would be held on February 10, 2014.

9.      The Debtors' motion for approval of a key employee incentive plan[4] [Docket No. 538] describes the Original Plan and the Credit Agreement milestones as "tied to achieving what the Debtors and the Backstoppers have agreed is the urgent task at hand: emerging from these chapter 11 cases as quickly and efficiently as possible." KEIP Motion ¶ 6. As this Court is aware, the KEIP performance targets are the same as the milestones set forth in the Credit Agreement and contemplated by the Original Plan.

10.      At the December 18, 2013 hearing on the KEIP Motion, the Debtors and the Backstoppers fiercely defended the Original Plan and performance target milestones as essential

---

[2] The Disclosure Supplement refers to the "Longview Credit Facility Claims" which is an undefined term in the Amended Plan and Disclosure Supplement. *See* Disclosure Supp. Art. II.C.2. Kvaerner understands that the references in the Disclosure Supplement should be to "Longview Credit Agreement Claims" rather than "Longview Credit Facility Claims."

[3] Order Approving the Adequacy of the Debtors' Disclosure Statement, (B) Approving Solicitation Procedures With Respect to Confirmation of the Debtors' Proposed Joint Plan of Reorganization, (C) Approving the Form of Various Ballots and Notices in Connection Therewith, (D) Scheduling Certain Dates with Respect Thereto, and (E) Granting Related Relief [Docket No. 663].

[4] Debtors' Motion for Entry of an Order (A) Authorizing and Approving the Debtors' Key Employee Incentive Plan and (B) Granting Related Relief (the "KEIP Motion").

4

to the Debtors' reorganization.  The Debtors and the Backstoppers characterized the Original Plan milestones as difficult-to-reach, yet important drivers of these chapter 11 cases.  *See* Tr. (Dec. 18, 2013), 58-109.  The Debtors and the Backstoppers argued that accomplishing reorganization within the timetable laid out by the milestones was necessary because remaining in chapter 11 is financially harmful to the Debtors.  *Id*. 103, 138.  In the words of counsel for the Backstoppers:  "These are real milestones, because they have real economic factors that go with them." *Id*. 105.[5]

11.     Twice, the Debtors have adjourned the confirmation of the Original Plan.  First, only three days prior to the original voting and plan objection deadlines, on January 24, 2014, the Debtors filed their Notice of Adjournment [Docket Nos. 781 & 784] which adjourned the Confirmation Hearing from February 10, 2014 to March 10, 2014 and the related deadlines.  And again, on February 21, 2014, the Debtors adjourned the Confirmation Hearing and the related deadlines to a date to be determined [Docket No. 935].

**III.     The Estimation Motion & the Foster Wheeler Settlement**

12.     On December 11, 2014, Longview filed the Estimation Motion.[6]  In support of the Estimation Motion, Longview argued the Debtors and Backstoppers want to "emerge from chapter 11 as expeditiously as possible," and that estimation of the Contractors' mechanics' lien claims on an expedited timetable was not only possible, but necessary for the consummation of a plan.  Estimation Motion 1-2, 3, 36-40.  Also on December 11, 2013, as part of the Disputed

---

[5] Kvaerner is not aware of any amendment to these milestones; no motion seeking approval of any amendment has been filed.

[6] Longview Power, LLC's Motion for Entry of an Order (A) Estimating the Claims of Kvaerner North American Construction, Inc., Siemens Energy, Inc. and Foster Wheeler North America Corp. in the Amount of Zero Dollars and (B) Granting Related Relief [Docket No. 582].

Mechanics' Lien Resolution process, Longview commenced an adversary proceeding against Kvaerner and Siemens Energy, Inc. ("Siemens") seeking a judgment "reducing and determining the maximum possible extent" of Kvaerner's and Siemens' mechanics' liens (the "Adversary Proceeding").  Compl. ¶ 2, *Longview Power, LLC v. Kvaerner North American Construction, Inc.*, et al., No. 13-152531-BLS (Bankr. D. Del.) [Adversary Proceeding Docket No. 1]. Notably, in the Adversary Proceeding, Longview does not seek a finding that Kvaerner's mechanics' lien is junior in priority to the prepetition liens of Longview's prepetition lenders.

13.    On February 1, 2014, the Debtors filed their objection to Kvaerner's proof of claim (the "Claim Objection") [Docket No. 829].  Through the Claim Objection, Longview contends that Kvaerner's claims should be disallowed because Longview is not liable to Kvaerner and Kvaerner's claims are unliquidated.  *See* Claim Objection ¶¶ 16-20.

14.    On February 7, 2014, just moments before the hearing on certain gating issues in connection with the Estimation Motion was to commence, Longview and Foster Wheeler informed the Court they were close to reaching a settlement and requested that the Court continue the gating issues hearing.  Over Kvaerner's and Siemens' objection, during a status conference on February 10, 2014, the Court granted Longview's request to adjourn indefinitely the hearing on the gating issues and to permit Longview and Foster Wheeler to promptly seek authorization under Rule 9019 to enter into their recently consummated Settlement Agreement [Docket No. 902-2].  The Court further ruled at this status conference that the Estimation Proceedings would not be rescheduled until after resolution of the motion to approve the Settlement Agreement.  To date, Longview has not sought to recommence the Estimation Proceedings.

15.     On February 11, 2014, Longview filed the Debtors' Motion Pursuant to Bankruptcy Rule 9019 and Bankruptcy Code Sections 364 (b) and (e) for an Order Authorizing Settlement Between Longview Power, LLC and Foster Wheeler North America Corp. (the "9019 Motion") [Docket No. 902] requesting that the Court authorize Longview's entry into the Settlement Agreement with Foster Wheeler.  Although Kvaerner is pleased to see Foster Wheeler remedy the defaults they caused the plant's boiler, Kvaerner objected to the 9019 Motion for a variety of reasons.  On March 7, 2014, after a contested hearing on the 9019 Motion, the Court entered the Order Authorizing Settlement between Longview Power, LLC and Foster Wheeler North America Corp. (the "9019 Order") [Docket No. 1018] approving Longview's entry into the Settlement Agreement and over-ruling Kvaerner's objections.  Kvaerner filed a timely Notice of Appeal of the 9019 Order on March 21, 2014 [Docket No. 1041].  Such appeal is currently pending in the Delaware District Court.

## IV.    The Amended Plan and Disclosure Supplement

16.     Nearly three months after the originally scheduled confirmation hearing, on May 2, 2014, the Debtors filed the First Amended Joint Plan of Reorganization (the "Amended Plan") [Docket No. 1139].  The Debtors did not file an amended Disclosure Statement in connection with the Amended Plan.

17.     The Amended Plan contains – as the Debtors obviously must admit – "material modifications" from the Original Plan.  *See* Continued Solicitation Motion, ¶ 14.  These material modifications include, *inter alia*:

- Abandoning the Disputed Mechanics' Lien Claim Resolution process and related deadlines.

- Changing the treatment of Foster Wheeler's claims due to the Settlement Agreement, including releasing certain claims against Foster Wheeler and assigning other claims against Kvaerner to Foster Wheeler.  Am. Plan Art. III.B.4.

7

- Creation of an Insurance Trust potentially funded with Insurance Trust Assets, which are proceeds from a policy issued by First American Title Insurance Company to the Longview Credit Agreement Collateral Agent (the "Title Policy"). *Id.* Arts. I.A.166 & IV.B.

- Commencement of a "Title Coverage Determination" proceeding which requires the Bankruptcy Court to enter an order "determining that proceeds from the Title Policy are available for assignment and distribution in accordance with the Plan," in the event Kvaerner's Mechanics' Lien Claims, among other claims, are allowed and deemed senior to liens securing the Longview Credit Facility Claims. *Id.* Art. IV.B.   The Title Coverage Determination is a condition precedent to the confirmation date; *Id.* Art. IX.A.5.

- Providing for the issuance of certain Cramup Notes intended to satisfy the Allowed Kvaerner Mechanics' Lien Claims in the event Insurance Trust Assets are insufficient to satisfy such claims. *Id.* Art. IV.A.3.

18.     On May 10, 2014, the Debtors filed the Continued Solicitation Motion, which seeks, *inter alia*, approval of the Supplemental Disclosure of Events in the Chapter 11 Cases (the "Disclosure Supplement") by finding that it provides adequate information under the disclosure requirements of section 1125 of the Bankruptcy Code.  The Continued Solicitation Motion also seeks to set the voting and objection deadlines for June 15, 2014, approval of continued solicitation using a Supplemental Solicitation Package, and approval of a Confirmation Hearing to be held on September 2, 2014.

19.     As noted earlier, the Debtors filed the Disclosure Supplement in connection with the Amended Plan rather than an amended Disclosure Statement.  The Debtors justify not filing an amended Disclosure Statement because of a desire to avoid the costs associated with preparing and circulating a revised disclosure statement.  Continued Solicitation Motion ¶ 20.

20.     The Continued Solicitation Motion states that the Title Coverage Determination is a means to satisfy Kvaerner's Mechanics' Lien Claims "without the necessity of a claims estimation proceeding."  *Id.* ¶ 13.   The Continued Solicitation Motion further states that "the Debtors' claims estimation process will be held in abeyance during the pendency of the Debtors'

8

continued solicitation and confirmation process." *Id.* ¶ 1.  Neither the Amended Plan, the Continued Solicitation Motion, nor the Disclosure Supplement give any information as to whether, when, or under what conditions the Debtors intend to resume the Estimation Proceedings.

## **OBJECTION**

21.     Kvaerner objects to the Continued Solicitation Motion for two main reasons.  First, the "material modifications" to the Original Plan result in an entirely new plan – whether this new plan is the same wolf dressed up in some creative sheep's clothing can only be determined after the lack of adequate disclosure is cured.  As a result of this entirely new plan with "material modifications," the Debtors should be required to re-solicit the Amended Plan and require all holders who previously voted on the Original Plan to submit new ballots to vote on the Amended Plan.

22.     Kvaerner does not take a position as to whether the Court should allow the Debtors to engage in the unconventional process of utilizing the Disclosure Supplement as some addendum (assuming such disclosures are adequate, which they are currently not) as opposed to requiring the conventional wisdom of simply drafting and seeking approval of a new integrated and accurate disclosure statement.  Regardless of that process issue, it would be inappropriate to allow and deem as acceptances or rejections for the Amended Plan any ballots cast by holders on the Original Plan pursuant to the Disclosure Statement that described these cases prior to the passage of significant developments and the paradigm shift that has now occurred.

23.     Second, the Disclosure Supplement utterly fails to provide adequate information regarding the new material terms of the Amended Plan.  Specifically, the Disclosure Statement does not contain adequate information regarding: (A) the Insurance Trust and Title Coverage

Determination, (B) the Cramup Notes, (C) the classification of Kvaerner's Mechanics' Lien Claims, (D) purported delays under the Original Plan, (E) the Debtors' intentions regarding the Estimation Proceedings, (F) the Debtors' intentions regarding the Adversary Proceeding against Kvaerner,  (G) the Debtors' intentions regarding the Claim Objection, and (H) the results of the prior solicitation under the Original Plan.

24.     Absent the Debtors' agreement to fully re-solicit the Amended Plan and the filing of a significantly revised Disclosure Supplement as discussed herein, the Court should deny the Continued Solicitation Motion.

## I.    Legal Standards

25.     The Bankruptcy Code requires debtors to solicit acceptance or rejection of a plan only through a disclosure statement that has been approved by the court as containing "adequate information." 11 U.S.C. § 1125(b).  Section 1125(a)(1) defines "adequate information" as

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

*Id.* § 1125(a)(1).

26.     Solicitation of acceptances and rejections are permitted "only after the proponent of a plan has filed a written disclosure statement" which "contain[s] adequate information" allowing interested parties to "make their own determination to accept or reject." *In re Forrest Hills Associates, Ltd.*, 18 B.R. 104, 104-05 (Bankr. D. Del. 1982).  In filing a disclosure statement, a debtor has an "express obligation of candid disclosure," and the "filing of a disclosure statement is a critical step in the reorganization of a Chapter 11 debtor." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988); *see also Ryan*

*Operations GP v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (noting that "disclosure requirements are crucial to the effective functioning of the federal bankruptcy system" and that "the importance of full and honest disclosure cannot be overstated") (internal citations omitted).

27.     The fundamental purpose of a disclosure statement "is to give the creditors the information they need to decide whether to accept the plan." *In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985). *See also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003) (noting that a debtor "has an affirmative duty to provide creditors with a disclosure statement containing 'adequate information' to 'enable a creditor to make 'an informed judgment' about the Plan'" and that a debtor thus must "identify and disclose all 'property of the estate,'" including contingent assets such as causes of action the debtor may have had against the defendant); *Oneida Motor Freight,* 848 F.2d at 417 (acknowledging that "[t]he importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court" and that, based upon such reliance, "we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information'"); *Gen. Elec. Cred. Corp. v. Nardulli & Sons, Inc.*, 836 F.2d 184, 188 (3d Cir. 1988) (noting that section 1125(a)(1) "requires a debtor . . . to submit a written disclosure statement containing adequate information to allow a reasonable holder to make an informed judgment about the plan").

28.     Thus, by way of example, a disclosure statement should detail matters affecting plan funding. *In re Fierman*, 21 B.R. 314 (Bankr. E.D. Pa. 1982).  Where a disclosure statement does not provide adequate information, it is insufficient. *See, e.g. In re Lower Bucks Hospital*, 488 B.R. 303, 318 (E.D. Pa. 2013) (affirming a holding that notice provided to bondholders of

third-party release was inadequate because, among other things, the disclosure statement did not mention the release in several places where it was germane).

29.    The Bankruptcy Code provides that the proponent of a plan may modify the plan before confirmation; however, the modifications must comply with section 1125.  11 U.S.C. § 1127.  Pursuant to Bankruptcy Rule 3019, where a plan has been accepted but not yet confirmed, the court can deem modifications to the plan accepted by claim or interest holders who have already accepted the plan so long as the court finds "that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification." Fed. R. Bankr. P. 3019(a).

30.    Where modifications to a chapter 11 plan of reorganization materially adversely affect or change treatment of claims or interests of creditors, additional disclosure or re-solicitation of the plan is appropriate.  *See, e.g., In re Young Broadcasting Inc.*, 430 B.R. 99, 120 (Bankr. S.D.N.Y. 2010) (holding that because plan provisions governing corporate governance affected the voting rights and the stock that creditors would receive, modifications regarding voting power of new stock were material and therefore required re-solicitation of votes); *In re Frontier Airlines, Inc.*, 93 B.R. 1014, 1023 (Bankr. D. Colo. 1988) (holding that creditors should have the opportunity to change their vote where modification to a plan provided for a distribution of a combination of cash and notes if creditors did not elect to receive payment in cash for their claims, whereas initially creditors were to receive cash in the amount of their allowed claims).

31.    Only where a modification would not have a material or adverse effect are additional disclosure and re-solicitation not required.  *See In re Leslie Controls, Inc.*, 2011 WL 1901547, at *11 (Bankr. D. Del. Jan. 18, 2011) (finding technical changes did not "materially adversely affect or change the treatment of any Claims or Equity Interests" and became part of

the plan without requirement of additional disclosure or re-solicitation of vote); *In re Holley Performance Prods. Inc.*, 2010 WL 3493035, at \*6 (Bankr. D. Del. June 7, 2010) (finding compliance with the Bankruptcy Code and Rules where modifications to a plan did "not change the treatment of any creditor entitled to vote on the Plan in a material or adverse way"); *In re U.S. Mineral Prods. Co.*, 2005 WL 5898300, at \*3 (Bankr. D. Del. Nov. 29, 2005) (finding technical modifications did not require additional disclosure or re-solicitation and did not require that claimholders be able cast new ballots); *In re Western Asbestos Co.*, 313 B.R. 456 (Bankr. N.D. Cal. 2004) (approving modifications of a plan without need to provide additional disclosure or re-solicit, before confirmation, where those modifications were "mere clarifications or technical amendments to the Plan not resulting in a material adverse change" in treatment of creditors and equity security holders who previously accepted the plan).

## II.     The Changes Made in the Amended Plan Materially Affect Claim or Equity Interests, Constituting Cause for the Court to Require Re-Solicitation

32.     The Amended Plan is an entirely new plan of reorganization when compared to the Original Plan.[7]   As a result, even if the Disclosure Supplement contained adequate information, which it does not, the votes on the outdated Original Plan must be discarded and all claim and interest holders entitled to vote on the Amended Plan should be required to cast new ballots.

---

[7] It is puzzling why the Debtors did not act true to form by drafting a new disclosure statement and plan rather than relying on an "amended" plan and using a supplement to the original Disclosure Statement.  However, if the Court is satisfied that the Amended Plan and Disclosure Supplement process is acceptable, Kvaerner takes no position on that point.  Nevertheless, the Disclosure Supplement must be substantially revised as discussed herein, because as currently drafted the Disclosure Supplement fails to come even close to providing adequate information.

33.     The Debtors are the first to acknowledge that much has transpired, and the landscape has dramatically changed, since they sought approval to solicit the Original Plan.[8] Those events include, but are not limited to, the initiation and adjournment of the Estimation Proceedings, the Settlement Agreement with Foster Wheeler, and the Debtors' filing of the Amended Plan.

34.     From December 2013 to February 2014, the Debtors and Backstoppers touted the Estimation Proceedings as the cornerstone to the Original Plan and **the only means by which the Debtors could successfully reorganize**.     Kvaerner predicted in its objection to the Estimation Proceedings that time would prove the Debtors' assertions wrong, just as the Debtors' assertions about the necessity of using the Foster Wheeler letters of credit to fund these cases were proven wrong.  Kvaerner was right.

35.     The Debtors and Backstoppers insisted that not estimating Kvaerner's claims, among others, would unduly delay administration of the Debtors' estates and force the Debtors to "languish" in chapter 11.[9]     Kvaerner objected to the adjournment of the Estimation Proceedings and sought to move forward on the gating issues at the February 7, 2014 hearing or soon thereafter.[10]     Now, over three months later, there has been no activity regarding the Estimation Proceedings.  The Amended Plan and Disclosure Supplement are utterly silent as to

---

[8] *See* Debtors' Motion for Entry of an Order (A) Further Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (B) Granting Related Relief, ¶ 6 (detailing a number of "significant milestones" the Debtors have achieved since December 27, 2013).

[9] *See* Backstoppers' Omnibus Reply to Estimation Objections ¶ 24; Tr. (Dec. 18, 2013) (". . . languishing in bankruptcy is not good for this company.  And notwithstanding the arbitration, 502(c) estimation is there for a reason, and this is it.").

[10] *See* Letter to the Honorable Brendan L. Shannon, from Eric Lopez Schnabel, Esquire, Regarding Matters to Be Heard on February 12, 2014 [Docket No. 891].

why the Debtors have seemingly abandoned estimation of Kvaerner's Mechanics' Lien Claims. This 180 degree turn has to be explained and cannot be simply ignored.

36.     Since soliciting the Original Plan, Longview entered into the Settlement Agreement with Foster Wheeler.  Among other things, the Settlement Agreement provides for Foster Wheeler to perform the work necessary to rehabilitate the Longview Power Facility, allegedly at no cost to the Debtors.[11]  However, the Settlement Agreement comes at a cost since it provides for the mutual release of claims between Longview and Foster Wheeler.[12]  The Settlement Agreement also assigns claims arising from Longview's contracts with Kvaerner and Siemens to Foster Wheeler.[13]

37.     In addition to the changed landscape in these chapter 11 cases, the Debtors' Amended Plan includes other admittedly material modifications:[14]

- The Disputed Mechanics' Lien Claims Resolution has been eliminated.  Am. Plan Arts. I.A.47 &  III.A.4-6.

- Provisions have been added for the Title Coverage Determination proceedings to occur in the Bankruptcy Court and for the creation of a Disputed Claims Reserve for the satisfaction of Kvaerner and Siemens' Mechanics' Lien Claims.  Id. Arts. I.A.48; IV.D; VII.D.  Alternatively, if the Title Coverage Determination does not occur by the Confirmation Date, the Amended Plan requires as a condition precedent to Confirmation that the Bankruptcy Court issue an order determining that the liens securing Kvaerner's Mechanics' Lien Claims are junior to the liens securing the Longview Credit Facility Claims.  Id. Art. IX.A.2.

- Provisions have been added for the creation of an Insurance Trust for proceeds from the Title Policy that are available for assignment and distribution to satisfy

---

[11] See Settlement Agreement ¶ 1; 9019 Motion ¶ 27.

[12] Settlement Agreement ¶ 6.  There are exceptions to the mutual release of claims in paragraph 7 of the Settlement Agreement.

[13] Id. ¶ 4.

[14] Continued Solicitation Motion ¶ 14.

15

Allowed Kvaerner Mechanics' Lien Claims. *Id.* Art. IV.D.1. The proceeds from the Title Policy will be transferred to the Insurance Trust via an Insurance Trust Agreement executed by the Debtors. *Id.* Art. IX.D.2.

- Provisions have also been added for the issuance of Cramup Notes to potentially satisfy Allowed Kvaerner Mechanics' Lien Claims in the event proceeds from the Insurance Trust Assets are not sufficient to satisfy such allowed claims. *Id.* Arts. IV.C.4.

- Provisions have been added for Foster Wheeler to have allowed administrative claims under the Settlement Agreement, *Id.* Art. II.A, and for Foster Wheeler's claim to be released in accordance with the Settlement Agreement. *Id.* Art. III.A.4. Establishment and funding of the Foster Wheeler Reserve is a condition precedent to the Confirmation Date. *Id.* Art. XI.B.7.

38.     Kvaerner is a holder of a senior secured claim.[15] Since its interests and the treatment of its claims are materially affected by the changes in the Amended Plan, the Debtors must re-solicit the Amended Plan.[16] *See In re Leslie Controls, Inc.*, 2011 WL 1901547, at *11 (Bankr. D. Del. Jan. 18, 2011); *In re Holley Performance Prods. Inc.*, 2010 WL 3493035, at *6 (Bankr. D. Del. June 7, 2010); *In re U.S. Mineral Prods. Co.*, 2005 WL 5898300, at *3 (Bankr. D. Del. Nov. 29, 2005); *In re Western Asbestos Co.*, 313 B.R. 456 (Bankr. N.D. Cal. 2004).

39.     Specifically, because the Amended Plan materially affects numerous claimholder interests, the Court should not deem modifications to the Amended Plan accepted by claim or interest holders who have previously voted to accept the Original Plan prior to the continuance of the January 27, 2014 Voting Deadline.[17] The Continued Solicitation Motion indicates that

---

[15] Claim Nos. 445.00 (Kvaerner) & 412.01, 412.02, 413.01, 413.02, 414.01 (Siemens).

[16] *See* Continued Solicitation Motion n. 5 (designating Kvaerner as one of "four Classes of creditors whose treatment is affected by the modifications contained in the Amended Plan"). Moreover, the material modification in the Amended Plan's treatment of Kvaerner's claims is adverse to Kvaerner. Under the Original Plan, Kvaerner's allowed claims would have been satisfied in cash under certain conditions, whereas under the Amended Plan Kvaerner's allowed claims are impaired and will be satisfied under certain conditions with proceeds from an insurance policy or through the Cramup Notes. *See* Original Plan Art. III.B.5 & Am. Plan Art. III.B.5.

[17] Fed. R. Bankr. P. 3019.

16

certain claimholders have already submitted votes in connection with the Original Plan, and that claimholders "will be permitted to recast votes at their option." *Id.* ¶ 11 & n.7. The voting deadline during the Debtors solicitation of the Original Plan was January 27, 2014. Considering the great changes in the state of the bankruptcy proceedings and the Debtors' material modifications to the Original Plan, all holders of claims or interests entitled to vote on the Amended Plan should be required to cast new ballots by the new voting deadline – prior ballots should be expunged.

**III.     The Disclosure Supplement Fails to Provide Adequate Information Regarding Material Modifications in the Amended Plan and the Bases for Those Material Modifications**

40.     The Disclosure Supplement contains a bare minimum of detail regarding the new material modifications to the Amended Plan. The information currently in the Disclosure Supplement is wholly inadequate and leads to confusion regarding what exactly the Debtors are doing and how the Amended Plan is intended to operate. In short, the Disclosure Supplement raises more questions than it answers. Regardless of whether the Debtors are required to re-file a new disclosure statement for the Amended Plan, at a minimum they must be required to revise the current disclosures set forth in the Disclosure Supplement as discussed below.

**A.     The Disclosure Supplement Fails to Provide Adequate Information Regarding the Insurance Trust, including the Title Coverage Determination and/or Declaratory Judgment Action**

41.     The Amended Plan calls for the creation of the Insurance Trust, which will hold the Insurance Trust Proceeds to fund distributions to the Contractors under the Amended Plan. The Disclosure Supplement contains three short paragraphs with a bare minimum of information regarding this Insurance Trust mechanism. Disclosure Supp. Art. II.C.2. In connection with the Insurance Trust, the Disclosure Supplement inadequately describes the Title Coverage

17

Determination whereby the Debtors will seek to have this Court determine the availability of the Title Insurance Proceeds. *Id.* The Disclosure Supplement fails to provide adequate information regarding the Insurance Trust, including the Title Coverage Determination, and also fails to disclose a number of related risks.

42.    As to the Title Coverage Determination, the Amended Plan provides:

- The Bankruptcy Court will enter an order acceptable to the Debtors and the Backstoppers "determining that proceeds from the Title Policy are available for assignment and distribution in accordance with the Plan" in the event the Liens securing Allowed Kvaerner Mechanics' Lien Claims are senior in priority to the Liens securing the Longview Credit Facility Claims. Am. Plan, Art. IX.D.1.

- Occurrence of the Title Coverage Determination is a condition precedent to the Confirmation Date. *Id.* Art. IX.5.

- In the event the Title Coverage Determination is not made by confirmation, there "shall have been" a determination by the Bankruptcy Court that Liens securing Kvaerner's Mechanics' Lien Claims are junior to the Liens securing the Longview Credit Facility Claims. *Id.* Art. IX.5.

43.    As to the Title Coverage Determination, the Disclosure Supplement provides:

- The Debtors will soon file "one or more proceedings" with the Bankruptcy Court regarding the proceeds from the Title Policy. Disclosure Supp., Art. I.I.

- "To confirm the availability of the Title Insurance Proceeds the Debtors expect to initiate a declaratory action in the near term, and to have such declaratory action heard in connection with confirmation of the Amended Plan." *Id.* Art. II.C.2.

- In the event the Title Coverage Determination does not occur by the Confirmation Date, the Bankruptcy Court "shall" have entered an order acceptable to the Debtors and the Backstoppers making a determination that Liens securing Kvaerner's Mechanics' Lien Claims "if any" are subordinate to Liens securing the Longview Credit Facility Claims. *Id.* Art. II.C.2.

44.    The Continued Solicitation Motion states that the "claims estimation process will be held in abeyance during . . . the continued solicitation and confirmation process." Continued Solicitation Motion ¶ 1.

45.     The Disclosure Supplement is objectionable for its lack of adequate information regarding the Insurance Trust and Title Coverage Determination for three main reasons.  First, there is a complete lack of detail in the Disclosure Supplement regarding how the Insurance Trust will operate, including any details about the proposed Insurance Trust Agreement.  Further, the Disclosure Supplement does not contain any specifics regarding the Title Coverage Determination.  This would include the timing of the Title Coverage Determination or related actions (including the identity of such actions and the subject matter) and how long the proceedings will take.  The Disclosure Supplement provides no assurance that the Title Coverage Determination and/or related actions would conclude by the Confirmation Date, meaning Kvaerner and similarly situated parties will not be able to ascertain the treatment of their claims until voting and Confirmation have passed.

46.     Additionally, the Disclosure Supplement fails to provide information regarding what parties would be named in or expected to participate in the Debtors' contemplated actions.  In short, the Amended Plan and Disclosure Supplement combined provide only that the Debtors will file at least one proceeding before the Bankruptcy Court in connection with the Title Coverage Determination, and nothing more than that.  Such lack of detail regarding a material provision of the Amended Plan is unacceptable.

47.     Second, the provisions on the Title Coverage Determination in the Amended Plan and Disclosure Supplement conflict, giving rise to confusion regarding the type and number of proceedings the Debtors intend to file in the Bankruptcy Court in connection with the Title Coverage Determination.  There is no indication of whether the Title Coverage Determination and declaratory judgment action are the same.  To the extent they are dissimilar, the Debtors need to explain the differences between the two actions and the need for each, as well as the

19

practical details set forth above.  Additionally, the Disclosure Supplement is silent as to what proceedings, if any, other than the Title Coverage Determination the Debtors may file.  For each type of action the Debtors contemplate filing, they should provide information regarding the nature and timing of each proceeding, its role in the Confirmation process, and the parties and interests that will be involved.

48.    Third, the Disclosure Supplement fails to specify whether Kvaerner's Mechanics' Lien priority will be determined as part of the Title Coverage Determination or through some other proceeding, such as the Estimation Proceedings, which are currently in "abeyance."  This information is important and must be disclosed because, to-date, the Debtors have not commenced any actions contesting the priority of Kvaerner's Mechanics' Liens.

49.    The Disclosure Supplement additionally fails to convey risks associated with the Title Coverage Determination.  The Disclosure Supplement fails to account for and explain risks related to the Insurance Trust and Title Coverage Determination, including *inter alia*:

- the Title Coverage Determination does not occur by the Confirmation Date;

- the Title Coverage Determination does not occur at all;

- the Bankruptcy Court finds that it cannot hear the issue;

- the Insurance Proceeds are found to be unavailable; and

- under what conditions the Backstoppers will withhold their consent or not approve any proposed treatment of Allowed Kvaerner Mechanics' Lien Claims. Am. Plan Arts. III.B.5.b. & b.i.B (requiring Backstopper consent for any treatment of Class 5 claim).

50.    The Disclosure Supplement does acknowledge the risk that the Bankruptcy Court will not "exercise jurisdiction over any and all disputes related to the Title Insurance Proceeds and the coverage of the Title Insurance Policy" or find that it is unable to exercise jurisdiction over such "disputes."  Disclosure Supp. Art. IV.E.  However, the Disclosure Supplement

20

addresses this risk only in the context that "[i]n such case, the operation of a key provision of the Amended Plan may occur without Bankruptcy Court oversight." *Id.* This statement is plainly unhelpful. The Debtors need to explain where "operation of [the] key provision" would take place, and in what type and number of actions it may occur. The Debtors should additionally explain how resolution of disputes concerning the Title Insurance Proceeds outside of the Bankruptcy Court will or may change or impact the terms of the Amended Plan and the treatment of claims and distributions under the Amended Plan.

51.     Without properly accounting and explaining for the foregoing risks, it is impossible for Kvaerner or other creditors to ascertain how the Debtors will satisfy Kvaerner's senior secured allowed claims. Thus, it is also impossible for creditors to determine with any certainty how the Debtors' treatment of Kvaerner's senior secured claims could impact the Debtors' treatment of other junior claims.

**B.     The Disclosure Supplement Fails to Provide Adequate Information Regarding the Cramup Notes**

52.     In the event that the Allowed Kvaerner Mechanics' Lien Claims are not satisfied in full with a payment in full in Cash from the Insurance Trust, the Amended Plan provides that Kvaerner will receive notes that "are secured by the Liens securing the Kvaerner Mechanic' [sic] Lien Claims to the extent required by section 1129(b)(2)(A)(i)(I) and (ii) with a present value equal to the Allowed amount of such Kvaerner Mechanics' Lien Claim . . . to the extent required by section 1129(b)(2)(A)(i)(II) of the Bankruptcy Code." *See* Am. Plan III.B.5; Disclosure Supp. II.B.2.

53.     Elements of a plan such as "what the plan proposes to pay creditors" are crucial matters for a disclosure statement. *In re Monroe Well Service, Inc.*, 80 B.R. 324, 331 (Bankr. E.D. Pa. 1987). A debtor's attempt to provide "fair and equitable treatment" to a creditor by

providing deferred cash payment does not necessarily give a creditor "full present value" of the creditor's secured claim.  *See, e.g., In re VIP Motor Lodge, Inc.*, 133 B.R. 41, 45 (Bankr. D. Del. 1991) (noting that "the length of time for which payments are deferred" under a plan can be too long to meet the requirements of section 1129(b)(2)(A)).  The Debtors have failed to explain how they are going to satisfy this requirement.

54.    First, the Debtors fail to establish precisely how the Cramup Notes comply with section 1129(b)(2)(A)(i) of the Bankruptcy Code, other than a bald assertion that such notes will comply.  Disclosure Supp. Arts. II.B.2(b)(i)(B)(1) & (2).  Such an assertion – "we will comply with the Code" – can never be adequate.

55.    For the "adequate information" standard to be met with respect to the Cramup Notes, the Debtors should disclose, at a bare minimum, how the Debtors plan on issuing such Cramup Notes in the event the Title Coverage Determination is not successful or there are insufficient Insurance Trust Assets available to satisfy Kvaerner's allowed claims.  Disclosure must be made as to the material terms of such notes, including the date or within what amount of time following confirmation Kvaerner will receive payment on such Cramup Notes.  However, the Amended Plan only provides that Cramup Notes will be secured (by Kvaerner's pre-existing liens) and have a present value "to the extent required" by section 1129(b)(2)(A).  No definitive information of any kind is provided either in the Amended Plan or Disclosure Supplement.

56.    Second, the Disclosure Supplement fails to discuss any risk factors, including, in the event that the Insurance Trust Proceeds are not available, the Insurance Trust Assets are insufficient to satisfy Kvaerner's claims in full, or whether the value of the Longview assets are sufficient to secure the Cramup Notes in the amount of an Allowed Kvaerner Mechanics' Lien Claim.  In addition, the Disclosure Supplement does not give any information regarding under

22

what circumstances the Backstoppers would refuse to give their consent to issuance of the Cramup Notes, or the likely result of such withholding of consent.

57.     As such, the Debtors have failed to provide adequate information regarding the issuance or effect of Cramup Notes they propose to issue in connection with the Amended Plan's alternative treatment of an Allowed Kvaerner Mechanics' Lien Claim.

**C.     The Disclosure Supplement Fails to Provide Adequate Information Because the Classification of Kvaerner's Mechanics' Lien Claims is Inconsistent and/or Unclear.**

58.     The Disclosure Supplement fails to provide adequate information regarding the classification of Kvaerner's Mechanics' Lien Claims as impaired claims.  As they were under the Original Plan, Kvaerner's Mechanics' Lien Claims are classified in Class 5 as impaired under the Amended Plan.[18]  This classification is incorrect given the treatment of the Allowed Kvaerner Mechanics' Lien Claims as set forth in the wholly inadequate Disclosure Supplement.  *See* Disclosure Supp. Arts. II.B.5, II.C.1-2.  The Disclosure Supplement discloses that the Debtors may issue Cramup Notes to Kvaerner as an alternative to payment in full in cash with distributions of Insurance Trust Assets.  Disclosure Supp. Art. II.B.2.

59.     Cramup is the ability of a debtor to satisfy senior secured lenders' claims over the objection of such senior secured lenders through reinstatement of defaulted debt or providing the "indubitable equivalent" of a secured lien.  *See* 11 U.S.C. § 1129(b)(2)(A).  A plan of reorganization "may in appropriate circumstances treat certain obligations as unimpaired" and thus utilize a cram-up procedure.  *In re Charter Comm'n*, 419 B.R. 221, 245 (Bankr. S.D.N.Y. 2009).  If a plan's treatment of a claim leaves "unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest," such claim is

---

[18] Am. Plan Arts. III.B.5 and 6.

23

unimpaired.  *In re PPI Enterprises (US), Inc.*, 228 BR 339, 353 (Bankr. D. Del. 1998) (internal quotations and citations omitted).  If the Cramup Notes issued to Kvaerner will be in compliance with § 1129(b)(2)(A), as asserted by the Amended Plan, the plan would thus appear to be treating Kvaerner's claim as unimpaired, otherwise, a cramup cannot be appropriate.

60.     A debtor's assertion that a class is impaired or unimpaired does not necessarily make it so.  *In re Forrest Hills*, 18 B.R. 104 (Bankr. D. Del. 1982).  Treatment of Kvaerner's allowed claims as unimpaired may make sense given the Amended Plan's treatment of such claims, which results in the Allowed Kvaerner Mechanics' Lien Claims being paid in full.  The Liens securing the Kvaerner Mechanics' Claims have priority over the Liens securing the Longview Credit Facility Claims.  In addition, evidence presented to the Court in support of the Final DIP Order, shows there is a sufficient equity cushion in the Longview assets to pay Kvaerner's Mechanics' Lien Claims in full.  Given the foregoing, however, the Disclosure Supplement is inadequate because it does not provide any explanation for the classification of the Kvaerner Mechanics' Lien Claims as impaired.

61.     The Debtors' designation of Kvaerner as an impaired holder of claims also conflicts with the Absolute Priority Rule.  Under the Absolute Priority Rule embodied in section 1129(b) of the Bankruptcy Code, no junior class may receive a distribution under a plan unless all senior classes are satisfied in full – i.e., meaning they are not impaired.  11 U.S.C. § 1129(b).  Thus, if Kvaerner is entitled to cash as payment in full or Cramup Notes, the prepetition lenders and all other junior claim and interest holders should not recover anything under the Amended Plan unless Kvaerner is treated as unimpaired.   Absent the condition that Kvaerner is unimpaired, the Debtors' employment of a cramup is again inappropriate.  *See In re Charter Comm'n*, 419 B.R. at 245.

62.     For the "adequate information" standard to be met, the Debtors must explain why they classify Kvaerner's Mechanics' Lien Claims as "impaired" and further explain the apparently inconsistent treatment of such claims as "impaired" under one alternative treatment and/or "unimpaired" under another.

**D.     The Disclosure Supplement Fails to Provide Adequate Information Regarding Purported Delays Related to the Original Plan**

63.     The Disclosure Supplement attributes the Debtors' development of the Amended Plan to delays in or related to the Original Plan and the Disputed Mechanics' Lien Claims Resolution process.[19]  The Disclosure Supplement acknowledges that the Debtors did not meet the milestones required under the Original Plan, including emerging from chapter 11 protection by March 7, 2014.[20]  According to the Disclosure Supplement, in light of that circumstance, the Debtors and Backstoppers worked together to amend the Credit Agreement to revise such milestones.[21]  The Disclosure Supplement provides that the Debtors and Backstoppers intend to again amend the milestones.[22]

64.     The Disclosure Supplement fails to explain the nature and basis of the delays they cite as necessitating a third change in the Confirmation schedule.  The Disclosure Supplement leaves claim and interest holders in the dark about why the confirmation and related plan effective date, which the Debtors and Backstoppers pressed as having to occur on a highly

---

[19] Disclosure Supp. Arts. I.I & I.F.

[20] *Id.* Art. I.F.

[21] *Id.*

[22] *Id.*

expedited timeline by a March 7, 2014 drop dead date,[23] have been postponed for nearly six months to a proposed September 2, 2014 confirmation hearing.  The Debtors point to proceedings in connection with the Estimation Motion as a cause for delay, however those proceedings have been inactive since February 10, 2014, and the Debtors unilaterally sought the continuance of such proceedings over Kvaerner's objection.  This leaves a three-month span of time completely unaccounted for by the Disclosure Supplement.  Claim and interest holders voting on the Amended Plan ought to know and understand the origin of these delays to aid in their evaluation of the Amended Plan and the Debtors' credibility in the assertions they put forward.

> **E.    The Disclosure Supplement Fails to Provide Adequate Information Regarding the Debtors' Intentions for Estimation of Kvaerner's Mechanics' Lien Claims**

65.    The Disputed Mechanics' Lien Claims Resolution process was the centerpiece of the Original Plan.  The Debtors and the Backstoppers repeatedly touted it as the only means by which the Debtors could exit chapter 11.[24]  But, since the Estimation Proceedings were adjourned on February 10, 2014, there has been no activity in these bankruptcy cases regarding the Estimation Motion.

---

[23] *See* Estimation Motion at 3 ("the Debtors need to emerge from chapter 11 as soon as possible, for various reasons including the harm to their business from remaining in chapter 11, the extraordinary expense of being in chapter 11, and potential defaults under the only source of financing that the Debtors have"); Statement of Counsel for the Backstoppers to the Court, Tr. (Dec. 18, 2013) ("These are real milestones, because they have real economic factors that go with them."); Disclosure Statement Art. V.J ("the Plan cannot be consummated if the Disputed Mechanics' Lien Claims Resolution has not occurred unless such condition is waived by the Backstoppers").

[24] *See* Estimation Motion at 36 ("the Plan requires that there be a mechanism to determine whether the Mechanics' Lien Claims are secured, senior, and by how much, <u>before</u> confirmation of the Plan;" "the Plan plainly requires estimation of the Mechanics' Lien Claims prior to confirmation in order to determine whether the Debtors' pre-petition secured creditors will agree to receive equity on account of their secured claims."); Backstoppers' Omnibus Estimation Reply at 16-17 (implying the Debtors would lose their DIP financing if Estimation Proceedings did not proceed).

66.     Now, over three months later, the Estimation Motion has not been withdrawn, and the Debtors have proffered an Amended Plan that completely abandons the Disputed Mechanics' Lien Claims Resolution process.  *See* Am. Plan I.A.47.  The Disclosure Supplement is silent as to the Debtors' intentions, or lack thereof, with respect to the Estimation Motion.  The Continued Solicitation Motion at least mentions it, but that disclosure is also inadequate, as it merely states that the "estimation process will be held in abeyance during the pendency of the Debtors' continued solicitation and confirmation process."  Continued Solicitation Motion ¶ 1.  There is no explanation about whether, under what conditions and when the Debtors or Backstoppers may attempt to re-commence Estimation Proceedings.  The Disclosure Supplement's remaining provision regarding the Estimation Proceedings appears to apply solely to Foster Wheeler.[25] This reference creates more confusion than it resolves – if the Estimation Proceedings are now to be held in abeyance, then why is there a mention of Foster Wheeler and the impact of a ruling in the Estimation Proceedings that is stayed?

67.     The fact that the Estimation Motion has not been withdrawn and the Disclosure Supplement's silence as to the future of the Estimation Proceedings creates confusion for Kvaerner, Siemens and other creditors who are left wondering why the Debtors and Backstoppers have seemingly, without explanation, abandoned the Estimation Motion and Estimation Proceedings.  There is no available information to indicate whether the Title Coverage Determination and Cramup Notes scheme is the ultimate method by which Kvaerner's

---

[25] *See* Disclosure Supp. Art. II.E.3 (providing claims between Longview and Foster Wheeler will be resolved pursuant to the Settlement Agreement and that any determination by the Court in connection with the Estimation Motion would have no collateral estoppel or res judicata effect on Foster Wheeler).

allowed claims will be resolved, whether the Debtors will attempt to resume the Estimation Proceedings, or if the Arbitration will be the ultimate determination of these issues.

68.     There are two simple methods by which the Debtors can clear up the confusion surrounding the Estimation Proceedings.  One is for the Debtors to provide information regarding their intentions with respect to the Estimation Proceedings in the Disclosure Supplement.  Such information should reasonably include an explanation of the Debtors' course of action regarding the resolution of the Disputed Mechanics' Lien Claims, as well as of the bases underlying the changes in the Debtors' approach toward treatment of the Disputed Mechanics' Lien Claims.  This information should include whether or not the Debtors and Backstoppers intend to initiate any proceedings to have the Court make a determination that the Liens securing the Kvaerner Mechanics' Lien Claims are junior to the Liens securing the Longview Credit Facility Claims.

69.     The other method is for the Debtors to withdraw their stalled Estimation Motion. If the Debtors intend to pursue a course of action other than the Estimation Proceedings as to the Contractors' claims, there is no need to leave the Estimation Motion pending before the Court at all.  If the Debtors still intend to pursue estimation of the Kvaerner Mechanics' Lien Claims, they ought to make clear in their Disclosure Supplement the nature of future Estimation Proceedings, why such proceedings are necessary, what claims would arguably be resolved, when such proceedings will occur, and the risks of attempting such proceedings after this self-inflicted prolonged delay.

70.     The Debtors should not be permitted to play with a closed hand by claiming that the Estimation Proceedings are in "abeyance" and not needed to confirm the Amend Plan, while intending to re-commence Estimation Proceedings should the new strategy for the treatment of

28

the subject claims in the Amended Plan hit a roadblock.   For these reasons the Disclosure

Supplement lacks adequate information.

**F.      The Disclosure Supplement Fails to Provide Adequate Information Regarding the Debtors' Intentions for Longview's Adversary Proceeding Against Kvaerner**

71.      Similar to the case with the Estimation Proceedings, the Disclosure Supplement

fails to provide information regarding Longview's Adversary Proceeding against Kvaerner.   In

the Adversary Proceeding, Longview seeks to reduce Kvaerner's Mechanics' Lien Claims in part

and deem a component of such claims unsecured.   Longview did not challenge the priority of the

Liens securing Kvaerner's Mechanics' Lien Claims.   There has been no activity in the Adversary

Proceeding since February 17, 2014, when Kvaerner filed a Reply in connection with its Motion

to Dismiss the Adversary Proceeding.

72.      The Disclosure Supplement does not address the Adversary Proceeding at all.

The Debtors included the fact that Longview commenced the Adversary Proceeding in the

original Disclosure Statement in the section titled "Estimation Process for the Disputed

Mechanics' Lien Claims."[26]   The Adversary Proceeding appears to have been a significant piece

of the Disputed Mechanics' Lien Claims Resolution process, a piece which has now been

eliminated, in the Amended Plan.   Now that the Disputed Mechanics' Lien Claims Resolution

process has been abandoned, and the Title Coverage Determination and potential related

proceedings are projected to go forward, the Disclosure Supplement should reconcile the

Adversary Proceeding with the Debtors' Amended Plan.

---

[26] Disclosure Statement Art. V.J.

73.     Again, if Longview does not intend to move forward with the Adversary Proceeding against Kvaerner, Longview should withdraw the Complaint in the Adversary Proceeding.  On the other hand, if the Debtors plan to utilize the Adversary Proceeding in connection with confirmation of the Amended Plan, the Disclosure Supplement must be revised to include adequate information regarding the same.

**G.      The Disclosure Supplement Fails to Provide Adequate Information Regarding the Debtors' Objection to Kvaerner's Claim**

74.     The Disclosure Supplement does not address the Claim Objection.  As with the Estimation Motion and Adversary Proceeding, the Debtors' Disclosure Supplement should indicate how the Claim Objection fits into the Amended Plan process.  If the Debtors seek to have the Court disallow Kvaerner's Mechanics' Lien Claims, the Debtors should provide information in the Disclosure Supplement regarding their intentions with respect to the Claim Objection.  In addition, the Debtors should disclose information regarding the forum in which the Claim Objection will be resolved, the means by which it will be resolved, and the timeline for such resolution.  If the Claim Objection does not fit into the Debtors scheme of reorganization or the Debtors no longer seek to disallow Kvaerner's Mechanics' Lien Claims, then the Debtors should withdraw the Clam Objection, rather than leave it forever pending before the Court.

**H.      The Disclosure Supplement Fails to Provide Information Regarding Holders of Claims Who Have Cast Votes**

75.     While the Continued Solicitation Motion reveals that certain claimholders submitted votes in connection with the Original Plan, the Disclosure Supplement does not identify which claimholders have already submitted votes, or whether such claimholders would need to submit new ballots to have their votes counted.  The Debtors surely shared such information with the Backstoppers in connection with the Amended Plan and new solicitation

deadlines.  To the extent the Debtors have revealed to the Backstoppers which claimholders have submitted votes on the Original Plan, the Debtors should share that information with all interested parties in its Disclosure Supplement.  As discussed above, it is Kvaerner's position that all claim and interest holders entitled to vote on the Amended Plan should be required to submit new ballots.  However, the Debtors should be required to fully disclose in the Disclosure Supplement the history of the prior solicitation on the Original Plan and that any party will be required to submit new ballots.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

31

WHEREFORE, Kvaerner respectfully requests (a) entry of an order requiring the Debtors to re-solicit the Amended Plan; and (b) in the event that the Debtors fail to revise the Disclosure Supplement as discussed herein, an Order denying the Continued Solicitation Motion.

**Dated:  May 22, 2014**                    **DORSEY & WHITNEY (DELAWARE) LLP**

/s/  Eric Lopez Schnabel
Eric Lopez Schnabel (DE Bar No. 3672)
Robert W. Mallard (DE Bar No. 4279)
Alessandra Glorioso (DE Bar No. 5757)
300 Delaware Avenue, Suite 1010
Wilmington, Delaware 19801
Telephone: (302) 425-7171
Facsimile: (302) 425-7177
E-mail:  schnabel.eric@dorsey.com
             mallard.robert@dorsey.com
             glorioso.alessandra@dorsey.com

**DORSEY & WHITNEY LLP**

William G. Primps, Esq.
Eric Lopez Schnabel, Esq.
51 West 52nd Street
New York, New York 10019
Telephone: (212) 415-9200
Facsimile: (212) 953-7201

Jocelyn L. Knoll, Esq.
Eric Ruzicka, Esq.
50 South Sixth Street
Minneapolis, Minnesota 55402
Telephone: (612) 492-6622
Facsimile: (212) 953-7201

***Attorneys for Kvaerner North American Construction Inc.***

4827-6224-2587\9