## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LONGVIEW POWER, LLC, <u>et al.</u>,[1] | ) | Case No. 13-12211 (BLS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Hearing Date: TBD**[2] |
| | ) | **Objection Deadline: TBD** |
| | ) | |

### DEBTORS' MOTION TO ENFORCE THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

hereby move the Court for entry of an order, substantially in the form attached hereto as

**<u>Exhibit A</u>**, enforcing the automatic stay with respect to or, in the alternative, entering

preliminary and permanent injunctions barring continued prosecution of a lawsuit brought by

First American Title Insurance Company ("<u>First American</u>"), a California corporation, against

Union Bank, N.A. (f/k/a Union Bank of California, N.A.) solely in its capacity as collateral agent

acting at the direction of the applicable secured parties and in no other capacity (solely in such

capacity, the "<u>Collateral Agent</u>"), under that certain Credit Agreement, dated February 28, 2007

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: (a) Longview Power, LLC (1860); and Longview Intermediate Holdings C, LLC (1008) (collectively, the "<u>Longview Debtors</u>"); and (b) Mepco Holdings, LLC (6654); Mepco Intermediate Holdings A, LLC (0502); Mepco Intermediate Holdings, LLC (4248); Mepco, LLC (3172); Coresco, LLC (6397); Dana Mining Company of Pennsylvania, LLC (8721); Dana Mining Company, LLC (4499); Mepco Conveyor, LLC (0477); Shannopin Materials LLC (1616); Border Energy, LLC (2798); and Alternate Energy, LLC (2428) (the foregoing excluding the Longview Debtors, collectively, the "<u>Mepco Debtors</u>").  The Longview Debtors' principal offices are located at 966 Crafts Run Road, Maidsville, West Virginia 26541.  The Mepco Debtors' principal offices are located at 308 Dents Run Road, Morgantown, West Virginia 26501.

[2]    The Debtors have requested the Court set a hearing date as of June 10, 2014 at 1:30 p.m. and an objection deadline of June 5, 2014 at 4:00 p.m. with respect to the relief requested by this Motion pursuant to the *Debtors' Ex Parte Motion to Shorten Notice with Respect to the Debtors' Motion to Enforce the Automatic Stay or, in the Alternative, for Preliminary and Permanent Injunctive Relief*, filed contemporaneously herewith.

(as amended from time to time with all supplements and exhibits thereto, the "Longview Credit Agreement") and "John Doe" defendants filed in the Superior Court of the State of California, County of Orange, captioned First American Title Insurance Company v. Union Bank, N.A. et al., Case No. 2014-00723753 (the "State Court Proceeding").[3]

### Preliminary Statement

1.      First American commenced the State Court Proceeding by filing a complaint on May 16, 2014 (the "State Court Complaint"), which is attached hereto as **Exhibit B**.  Through the State Court Proceeding, First American has sought a declaratory judgment that it does not have any obligation under the Policy of Title Insurance, number A40008468 (the "Title Insurance Policy") to insure the priority of liens arising under the Longview Credit Agreement that are secured by the Debtors' 700-megawatt power facility (the "Longview Power Facility") and related properties.  Contemporaneously herewith, the Debtors have commenced an adversary proceeding also seeking a determination that, among other things, the Title Insurance Policy provides coverage on account of defects in title arising from approximately $335.7 million in mechanics' liens asserted against the Longview Power Facility and related properties (the "Adversary Proceeding").

2.      The relief requested by this Motion and through the Debtors' Adversary Proceeding is at the heart of the Debtors' reorganization.  On May 2, 2014, the Debtors filed the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 1139] (the "Amended Plan") to bring this operational and balance sheet restructuring to a successful conclusion.  Pursuant to the Amended Plan, the Collateral Agent has agreed to assign certain proceeds from the Title Insurance Policy (collectively,

---

[3]    Capitalized terms used but not defined herein shall have the meanings set forth in the Motion or the Amended Plan (as defined herein), as applicable.

the "Title Insurance Proceeds") to the Debtors for distribution in accordance with that plan.  (See Amended Plan Art. IV.B.2.)[4]  Under the Amended Plan, the Debtors will use the Title Insurance Proceeds to satisfy claims putatively secured by mechanics' liens (collectively, the "Mechanics' Lien Claims") asserted by Siemens Energy, Inc. ("Siemens") and Kvaerner North American Construction Inc. ("Kvaerner"), respectively, if such Mechanics' Lien Claims are ultimately allowed and determined to be senior to claims arising under the Longview Credit Agreement. (See Amended Plan Art. III. 5, 6.)

3.    The Debtors' access to such proceeds is therefore an essential component of the Amended Plan's feasibility.  See 11 U.S.C. § 1129(a)(11).  To this end, the Amended Plan requires the Debtors to obtain a determination from this Court that "proceeds from the [Title Insurance Policy] are available for assignment and distribution in accordance with the Plan" if liens securing the Mechanics' Lien Claims are determined to be senior in priority to liens securing indebtedness outstanding under the Longview Credit Agreement.  (Amended Plan Art. IV.B.1.)  As a result, the availability of coverage under the Title Insurance Policy—and the Debtors' interest in the proceeds from that policy as an estate asset—is at the core of the Debtors' entire reorganization.  Those questions are, accordingly, core proceedings and properly before this Court.  Cf. In re SemCrude, No. 08-11525, 2011 WL 4711891, at *5 (Bankr. D. Del. Oct. 7, 2011) (Shannon, J.) ("[M]atters requiring a declaration of whether certain property comes within the definition of property of the estate, as set forth in Bankruptcy Code § 541, are core proceedings." (internal quotation marks committed)); see also 28 U.S.C. § 1334(e)(1).

---

[4]    As part of the Amended Plan Supplement, the Debtors and the Collateral Agent anticipate filing in the near term a separate assignment agreement implementing the Collateral Agent's contribution of the Title Insurance Proceeds to the Debtors in accordance with the Plan.

4.      On May 11, 2014, the Debtors again stated their intention to commence such a proceeding before this Court when the Debtors filed their motion seeking approval of supplemental disclosures and solicitation procedures in connection with their Amended Plan. First American, in turn, commenced the State Court Proceeding to circumvent the Debtors' rights in the Title Insurance Policy and its proceeds, thereby attempting to derail the Debtors' reorganization.  (See State Court Complaint ¶¶ 56, 84.)  In fact, First American has justified its attempt to bar coverage under the Title Insurance Policy by relying primarily, if not exclusively, on its characterization of the record in these chapter 11 cases and the Debtors' Amended Plan.  For example, First American's State Court Complaint asserts that coverage should be denied because:

- the Amended Plan "constitute[s] a de facto assignment of the [Title Insurance Policy]" and "does not comply with applicable law," (State Court Complaint ¶ 58);

- "the Backstoppers have directed and controlled [the Debtors] and the Collateral Agent," (id. ¶ 40);

- the Amended Plan "operates as a concession by [the Debtors] . . . as to the validity and priority of the Mechanics' Lien Claims," (id. ¶ 61);[5]

- the Backstoppers have directed the Debtors to "unreasonably limit the scope and extent of the defense" that may be raised with respect to claims and liens asserted by Kvaerner and Siemens (id. ¶ 74); and

- the Debtors wrongfully "compromised or released claims of setoff" belonging to First American (as subrogee) by virtue of the Debtors' settlement with Foster Wheeler North America, Inc. ("Foster Wheeler") (id. ¶ 92).

---

[5]     As the Amended Plan makes clear, no such "concession" has ever been made.  The Amended Plan specifically reserves to the Debtors all rights to: (a) dispute any and all claims asserted by Siemens and Kvaerner in all respect; and (b) challenge the validity, priority, and perfection of any liens purportedly securing such claims. (Amended Plan Art. III.B.5.d, III.B.6.d (specifically reserving the Debtors' rights to dispute Siemens' and Kvaerner's claims).)  As the Court is also aware, the Debtors are also engaged in vigorous arbitration with Siemens and Kvaerner.

4

In other words, First American acknowledges that the Debtors have a substantial interest in the Title Insurance Policy and that the Title Insurance Policy is inextricably intertwined with the Debtors' Amended Plan.  (Cf. id. ¶ 57 (alleging coverage should be denied because "the Amended Plan does not comply with applicable law").)  Yet First American has concurrently sought to evade the protections afforded to the Debtors by the Bankruptcy Code. Cf. 11 U.S.C. § 362(a)(3).

5.      First American cannot end run the chapter 11 process or thwart the Debtors' rights in this fashion.  These chapter 11 estates have a clear interest in the $825 million of proceeds available under the Title Insurance Policy.  (See Amended Plan Art. IV. B.)  This interest is an asset of the Debtors' bankruptcy estates, see 11 U.S.C. § 547(a)(7), automatically protected by section 362 of the Bankruptcy Code, see 11 U.S.C. § 362(a)(3).  First American cannot strip an $825 million asset from these chapter 11 estates by deliberately excluding the Debtors from an action filed in a California state court.  See In re Kaiser Aluminum Corp., 315 B.R. 655, 658 (D. Del. 2004).  And even if First American disputes whether the proceeds from the Title Insurance Policy are an asset of the estate, that dispute falls exclusively within this Court's jurisdiction.  See SemCrude, 2011 WL 4711891, at *5; see also 11 U.S.C. § 1334(e)(1).

6.      Moreover, any litigation predicated on the factual record advanced by First American would expose these chapter 11 estates to an unacceptable risk of inconsistent judgments or findings that could materially prejudice the Debtors' reorganization.  For example, and as noted above, First American has sought to deny coverage on the basis that "the Amended

Plan does not comply with applicable law." (State Court Complaint ¶ 58.)[6]  Clearly the Debtors

and these chapter 11 estates would be prejudiced by a determination from a California state court

that the Amended Plan "does not comply with applicable law," however erroneous such a

determination might be.[7]  Cf. 11 U.S.C. § 1123(a)(3).

      7.      Similarly, First American seeks to deny coverage on the basis that the Amended

Plan "operates as a concession" granting Siemens and Kvaerner allowed, first priority secured

claims totaling hundreds of millions of dollars.  (See State Court Complaint ¶ 61.)  Of course,

such an assertion blatantly disregards both the record of these chapter 11 cases and the

Amended Plan's plain terms.[8]  But a state court determination that this alleged "concession" in

fact occurred could have catastrophic effects on both these chapter 11 cases and the Debtors'

pending arbitration with Siemens and Kvaerner: such a ruling could not only eliminate coverage

under the Title Insurance Policy but could also eliminate the Debtors' rights, claims, and

counterclaims with respect to Siemens and Kvaerner[9] and trigger a default under the Debtors'

DIP facility.  The risk of a California state court proceeding triggering such an inconsistent, if

not absurd, outcome demonstrates precisely why injunctive relief is required here.

---

[6]     In fact, First American has objected to the Debtors' Amended Plan in this Court on the same grounds.  See generally *Response of First American Title Insurance Company to Debtors' Motion for Entry of an Order (A) Approving the Debtors' Continued Solicitation of the Amended Plan and the Adequacy of the Supplemental Disclosure in Connection Therewith, (B) Establishing Certain Deadlines and Procedures in Connection with Plan Confirmation, and (C) Granting Related Relief* [Docket No. 1174].

[7]     Any determination regarding whether the Amended Plan complies with applicable law on account of the Debtors' treatment of their interest in the Title Insurance Policy is squarely a matter for determination by this Court and not a California state court.  See 11 U.S.C. §§ 1129(a)(3); 28 U.S.C. §§ 157(b)(2)(L), 1334(b), (e).

[8]     See (Amended Plan Art. III.B.5.d, III.B.6.d (specifically reserving the Debtors' rights to dispute Siemens and Kvaerner's claims).)

[9]     The Debtors' claims, counterclaims, and defenses with respect to Siemens and Kvaerner are themselves assets of these chapter 11 estates protected by the automatic stay.  See 11 U.S.C. §§ 362(a)(1), 541(a)(1), 558.

8.      In sum, the Debtors respectfully request that the Court stay or, in the alternative, enter preliminary and permanent injunctive relief with respect to the State Court Proceeding.

## Relief Requested

9.      By this Motion, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**:  (a) enforcing the automatic stay with respect to, or, in the alternative, issuing a preliminary injunction and permanent barring continued prosecution of the State Court Proceeding; and (b) granting related relief.

## Background

**I.    The Chapter 11 Cases**

10.     The Debtors commenced these chapter 11 cases on August 30, 2013 to effectuate an operational and a balance sheet restructuring.  In particular, the Debtors have sought to resolve issues arising from the Mechanics' Lien Claims asserted by Siemens, Kvaerner, and Foster Wheeler (collectively, the "Contractors") with respect to construction of the Longview Power Facility.  These claims originally totaled in excess of $350 million prior to the Debtors' March 2014 settlement with Foster Wheeler.  As the Court is aware, the Contractors have asserted that their Mechanics' Lien Claims are secured by liens on the Longview Power Facility and related properties that are senior to liens arising under the Longview Credit Agreement.

11.     The Debtors, for their part, have vigorously asserted their own claims, counterclaims, and defenses against the Contractors in their pending arbitration.  The Debtors have also specifically reserved all rights to challenge the amount, priority, validity, and perfection of the Contractors' alleged Mechanics' Lien Claims, in particular, at each stage of these chapter 11 cases.[10]   The arbitration among the Debtors and the Contractors remains

---

[10]  (See, e.g., Amended Plan Art. III.B.5.d., III.B.6.d (specifically reserving Debtors' rights to dispute Siemens' and Kvaerner's claims).)

ongoing and is not expected to conclude until at least early 2015. Regardless, the Debtors' efforts to resolve the Mechanics' Lien Claims have been, and remain, at the very core of these chapter 11 cases.

12.    To this end, the Debtors entered into arm's-length negotiations with holders of more than 60 percent of claims under the Longview Credit Agreement (collectively, the "Backstoppers") regarding a comprehensive operational and balance sheet restructuring during the Fall of 2013. These negotiations ultimately resulted in the Backstoppers' agreements to, among other things:

- fund a $150 million DIP credit facility;

- convert that DIP credit facility into an exit facility upon the Debtors' emergence from chapter 11;

- support the Debtors' ongoing efforts to identify and implement a "fix" for the Longview Power Facility; and

- equitize approximately $1.2 billion of prepetition debt.

13.    These agreements were incorporated into the *Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 671] (the "Original Plan"), for which the Debtors received disclosure statement approval on December 18, 2013 [Docket No. 663]. In order to resolve the material contingencies arising from the Mechanics' Lien Claims, the Original Plan contemplated that the Debtors would commence estimation proceedings with respect to such claims, and the Debtors commenced those proceedings on December 11, 2013.[11] The Debtors' estimation process has, to date,

---

[11]    See *Motion to Approve Longview Power, LLC's Motion for Entry of Order (A) Estimating the Claims of Kvaerner North American Construction, Inc., Siemens Energy, Inc. and Foster Wheeler North America Corp. in the Amount of Zero Dollars and (B) Granting Related Relief* [Docket No. 582].

KE 31789286

resulted in numerous contested hearings, extended discovery, and substantial motion practice before this Court.[12]

14.     The Debtors and the Backstoppers subsequently engaged in continued arm's-length negotiations regarding alternative plan structures that would facilitate the Debtors' efforts to complete their operational and balance sheet restructuring.    During this time, First American, the Debtors, the Contractors, and the Backstoppers participated in non-binding mediation to resolve the various disputes among the parties.

15.     The Debtors also utilized this time to make substantial progress on their operational restructuring initiatives.    The Debtors reached agreements with affiliates of FirstEnergy Corp. on a long-term supply arrangement for the Debtors' coal mining operations, which agreements were approved by the Court on February 26, 2014.[13]   The Debtors further entered into a settlement with Foster Wheeler, which was approved by the Court pursuant to an order entered on March 7, 2014.[14]   Through that settlement, Foster Wheeler agreed to repair the Longview Power Facility at potentially no cost to these chapter 11 estates and to release its Mechanics' Lien Claims in exchange for, among other things, the Debtors' assignment to Foster Wheeler of certain claims against Siemens and Kvaener.

## II.    The Amended Plan

16.     Following their negotiations, the Debtors and the Backstoppers agreed on a plan structure that would permit the Debtors to complete their restructuring and emerge from chapter 11 in the near term—as opposed to requiring the Debtors to continue litigating claims

---

[12]    The Debtors' estimation proceedings remain in abeyance as of the date hereof.

[13]    See *Stipulation and Agreed Order* [Docket No. 967].

[14]    See *Order Authorizing Settlement Between Longview Power, LLC and Foster Wheeler North America Corp.* [Docket No. 1018].

KE 31789286

estimation or to remain in chapter 11 pending the conclusion of their arbitration.  Specifically,

the Debtors and the Backstoppers agreed on the terms of the Amended Plan, which provides, in

relevant part:

- the Collateral Agent's agreement to contribute proceeds, if any, available from the $825 million available under the Title Insurance Policy to be distributed by the Debtors pursuant to the Amended Plan; and

- such proceeds will be utilized to satisfy any allowed claims held by Siemens or Kvaener that are ultimately determined to be senior to claims arising under the Longview Credit Agreement.

17.    On May 10, 2014, the Debtors filed the *Debtors' Motion for Entry of an Order
(A) Approving the Debtors' Continued Solicitation of the Amended Plan and the Adequacy of the
Supplemental Disclosure in Connection Therewith, (B) Establishing Certain Deadlines and
Procedures in Connection with Plan Confirmation, and (C) Granting Related Relief*
[Docket No. 1145] (the "Continued Solicitation Motion"), seeking approval of supplemental

disclosures and procedures related to the Amended Plan and the Debtors' continued solicitation

process.  The Continued Solicitation Motion is pending before the Court and is set for hearing on

May 29, 2014.[15]

18.    The Debtors' interest in the Title Insurance Policy is thus at the very core of the

Debtors' reorganization and plan confirmation.  The Debtors' interest in the Title Insurance

Policy will provide the funds the Debtors will use to satisfy the $335.7 million in

Mechanics' Lien Claims that have been asserted against the Longview Power Facility and related

properties (to the extent such claims are ultimately allowed on a senior basis to claims arising

under the Longview Credit Agreement).   If coverage under the Title Insurance Policy is

somehow unavailable to the Debtors, the Debtors will not have cash available to satisfy such

---

[15]    As noted above, First American has objected to the relief requested by the Debtors' Continued Solicitation
Motion.

claims.  Thus, the Debtors—and not the Collateral Agent—are truly the economic party in interest with respect to any coverage determination under the Title Insurance Policy.

19.     To this end, the Amended Plan requires the Debtors to obtain a "Title Coverage Determination"—i.e., entry of an order from the Court determining that "proceeds from the [Title Insurance Policy] are available for assignment and distribution in accordance with the Plan" if there exist liens securing the Mechanics' Lien Claims that are determined to be senior in priority to liens securing indebtedness outstanding under the Longview Credit Agreement.  (Amended Plan Art. IV.B.1.)  Unless this requirement is satisfied or waived by the Backstoppers, the Debtors cannot confirm or consummate their Amended Plan.  (See id. Art. IX.A.5.)   The Debtors' obligation to obtain the Title Coverage Determination pursuant to the Amended Plan reflects the Debtors' more general statutory obligation to establish plan feasibility.  See 11 U.S.C. § 1129(a)(11).

20.     On this record, the Debtors' interest in the Title Insurance Policy is manifest.  The Debtors have a right in the Title Insurance Policy as a result of the Collateral Agent's agreement to contribute such proceeds to the Debtors in accordance with the Amended Plan and the assignment agreement that will be filed in the near term, as referenced above.  (See Amended Plan Art. IV.B.2.)  Such proceeds are absolutely essential to the Debtors' ability to confirm their Amended Plan and fund creditor distributions.  The Debtors cannot confirm their Amended Plan either as a matter of contract, (see Amended Plan Art. IX.A.5), or as a matter of law, see 11 U.S.C. § 1129(a)(11), if the Debtors' interest in the Title Insurance Policy is clouded.  Nor can it be reasonably disputed that these chapter 11 estates would be materially, if not irreparably, harmed if the Debtors are denied the opportunity to enforce their rights in the Title Insurance Policy and the protections established by the Bankruptcy Code.

11

## III.    The State Court Complaint

21.    On May 16, 2014, First American filed the State Court Proceeding in direct response to the Debtors' Amended Plan and the Continued Solicitation Motion.  (See State Court Complaint ¶¶ 54–61, 74.)  In its complaint, First American asserts that a California state court— and not this Court—is the proper forum for determining, among other things, whether coverage exists under the Title Insurance Policy and whether the Debtors' Amended Plan complies with applicable law.

22.    First American does not dispute (nor could it) that coverage is available under the Title Insurance Policy if the Mechanics' Lien Claims are senior to claims arising under the Longview Credit Agreement.  Rather, First American relies on its own characterization of the record of these chapter 11 cases and the effect of the Debtors' Amended Plan as the basis to deny coverage.  (See, e.g., id. ¶ 74 ("Based on the Amended Plan, the Backstoppers have directed [the Debtors], the Lenders, and [the Collateral Agent] to unreasonably limit the scope and extent of the defense independent counsel will interpose . . . .").)  First American asserts that "BARS TO COVERAGE UNDER THE TITLE POLICY,"  (State Court Complaint p.12), arise from, among things:

- the Collateral Agent and the Debtors having wrongfully stipulated "to the validity and priority of the Mechanics' Lien Claims," (State Court Complaint ¶ 61);

- the Debtors having somehow assigned their claims against the Contractors to the Longview Lenders and, therefore, wrongfully deprived First American of its rights against Foster Wheeler (as subrogee) by settling with Foster Wheeler, (id. ¶ 91); and

- the Amended Plan being "an improper attempt by [the Collateral Agent], the Lenders, and [the Debtors] to assign the Title Policy" in accordance with the Amended Plan (id. ¶ 84).

And, as noted above, First American has alleged that coverage should be denied under the Title Insurance Policy because the Debtors' Amended Plan "does not comply with applicable law."

(id. ¶ 58.).  Of course, these assertions blatantly mischaracterize the facts of these chapter 11 cases and applicable law.  But First American's heavy reliance on the record of these chapter 11 cases as the basis to deny coverage further evidences that the State Court Proceeding is inextricably intertwined with the Debtors' Amended Plan and was filed to eliminate the Debtors' interest in the Title Insurance Policy.

23.    First American cannot be permitted to prosecute an action that might otherwise strip these estates of an $825 million asset without bringing that action before this Court.  See 11 U.S.C. §§ 362(a)(3), 541(a)(7), 28 U.S.C. § 157(b)(2)(A), (G), (K), (L), (O); SemCrude, 2011 WL 4711891, at *5; see also 28 U.S.C. § 1334(e).  Thus, the Debtors have filed the present Motion to enforce their rights under applicable law and to preserve valuable estate assets for their stakeholders.

## Jurisdiction

24.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

25.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

26.    The statutory bases for the relief requested herein are sections 362(a)(3) and 105 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").

## Basis for Relief

27.    The Bankruptcy Code centralizes competing claims for a debtor's assets into a single forum to provide a platform for the debtor's rehabilitation and reorganization.  See United States v. Whiting Pools, Inc., 462 U.S. 198 204–05 (1983).  The Bankruptcy Code's

KE 31789286

channeling function is established in the first instance through the broad definition of "property of the estate" fixed by section 541(a).  See id. at 204 ("Thus, to facilitate the rehabilitation of the debtor's business, all the debtor's property must be included in the reorganization estate."); see also In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000) ("We have previously emphasized Congress' intent to delineate in broad terms what constitutes property of the estate.").  The automatic stay enforces this channeling function by preventing the piecemeal breakup and value destruction that would otherwise result if parties were otherwise permitted to 'race to the courthouse' of their particular choosing.  See In re The Fairchild Corp., Case No. 09-10899, 2009 WL 4546581, at *3 (Bankr. D. Del. Dec. 1, 2009).

28.    Thus, matters affecting estate assets—including the determination as to whether a particular is an "asset of the estate"—belong squarely in the bankruptcy court.  See 28 U.S.C. §§ 157(b)(2)(A), 1334(b), 1334(e).  As a corollary to this principle, both section 362(a) and the Court's equitable authority codified at section 105(a) of the Bankruptcy Code, are properly used to stay proceedings that might otherwise strip assets from a debtor's estate or that might threaten a debtor's ability to reorganize.  Such relief is of vital importance here.

## I.    The State Court Proceeding Should Be Stayed Pursuant to Section 362 of the Bankruptcy Code

29.    Section 541(a)(7) expressly provides that property of the estate includes "[a]ny interest in property that the estate acquires after the commencement of the case."  The Third Circuit has itself recognized that the scope of the phrase "any interest" as used by section 541(a)(7) is in this regard exceptionally broad:  "[T]he estate encompasses everything that the debtor owns upon filing a petition, as well as any derivative rights, such as property interests the estate acquires after the case commences."  O'Dowd, 233 F.3d at 202 (emphasis added).

KE 31789286

30.     The Bankruptcy Code further provides that "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" is automatically enjoined.  11 U.S.C. § 362(a)(3) (emphasis added).  As noted above, the automatic stay enforces the Bankruptcy Code's channeling function by ensuring that all proceedings affecting estate property are brought into the bankruptcy court's centralized forum. See McCartney v. Integra Nat'l Bank N., 106 F.3d 506, 512 (3d Cir. 1997) ("The centralization of all claims in the bankruptcy court also permits the assets of the debtor's estate to be marshaled for distribution to creditors in an orderly and equitable fashion.").

31.     To this end, Third Circuit courts have recognized that application of the automatic stay is not limited to suits or actions where the debtor is actually a named party.  Rather, the automatic stay must be enforced with respect to nominally third party actions where (a) an identity of interest exists as between the debtor's interest in the litigation and the nominal defendant at issue or (b) where the third-party action could adversely impact the debtor's ability to reorganize:

> [the automatic stay] is properly extended to actions against non-debtors where an "identity of interest" exists between the debtor and non-debtor defendant such that the debtor is the real party defendant and the litigation will directly affect the debtor and, more specifically, the debtor's assets or its ability to pursue a successful plan of reorganization or liquidation under Chapter 11.

In re Midway Games, Inc., 428 B.R. 327, 334 (Bankr. D. Del. 2010); see also In re W.R. Grace & Co., 386 B.R. 17, 30 (Bankr. D. Del. 2008).  Thus, the automatic stay should be enforced with respect to third party actions where:  "the non-debtor owns assets which will either be a source of funds for the debtor or when the preservation of the non-debtor's credit standing will play a significant role in the debtor's attempt to reorganize."  In re Saxby's Coffee Worldwide, LLC, 440 B.R. 369, 379 (Bankr. E.D. Pa. 2009).  This rule recognizes that parties should not be able to frustrate a debtor's reorganization or circumvent the channeling function established by sections

15

362 and 541 of the Bankruptcy Code by artfully pled complaints that pointedly exclude the debtor.  See Kaiser Aluminum, 315 B.R. at 658.

A.    **The Debtors Share an Identity of Interest with the Collateral Agent in the State Court Proceeding**

32.    The Debtors are the real economic party in interest in the State Court Proceeding. The Collateral Agent has agreed to assign any and all proceeds from the Title Insurance Policy to the Debtors for distribution in accordance with the Amended Plan.  The Title Insurance Proceeds will, in turn, enable the Debtors to fund distributions on account of the Mechanics' Lien Claims if and to the extent that those claims are ultimately allowed on a senior basis to claims arising under the Longview Credit Agreement.  A judgment denying coverage under the Title Insurance Policy would therefore deprive these chapter 11 estates of approximately $825 million of proceeds that would otherwise be available for distribution.  A judgment in favor of First American in the State Court Proceeding is therefore a judgment against the Debtors—not the Collateral Agent.

33.    The State Court Proceeding is no different than any other foreclosure or collection action that would strip assets from a debtor in possession.  Yet Congress enacted the automatic stay precisely to prevent the piecemeal erosion of a debtor's estate in this fashion.  See Fairchild Corp., 2009 WL 4546581, at *3.  The Debtors' interest in the Title Insurance Proceeds, which constitutes property of these chapter 11 estates, is thus protected by the automatic stay.  See A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986) (extending automatic stay to third party action where "a judgment against the third-party defendant will in effect be a judgment or finding against the debtor").

34.    And although First American may dispute whether the assignment contemplated by the Amended Plan is valid as a matter of contract, that dispute "goes more to the merits of the

16

parties' respective claims" and does not change the fact that the Debtors are the real economic party in interest in the State Court Proceeding.  Cf. Kaiser Aluminum, 315 B.R. at 659.[16]  The question as to the scope and extent of the Debtors' interest in the Title Insurance Policy and its proceeds is ultimately a determination that belongs in this Court.  See 28 U.S.C. § 157(b)(2)(A), (E), (L); see also 11 U.S.C. § 1334(e)(1); SemCrude, 2011 WL 4711891, at *5 ("[M]atters requiring a declaration of whether certain property comes within the definition of 'property of the estate,' as set forth in Bankruptcy Code § 541, are core proceedings." (internal quotation marks committed)); In re Duval County Ranch Co., 167 B.R. 848, 849 (Bankr. S.D. Tex. 1994) ("Whenever there is a dispute regarding whether property is property of the bankruptcy estate, exclusive jurisdiction is in the bankruptcy court.").

35.    Nor can First American disregard the automatic stay by merely asserting that the Debtors have no interest in the property in question.  Such an outcome completely undermines the channeling function the automatic stay was intended to serve.  See Kaiser Aluminum, 315 B.R. at 659.  Thus, the automatic stay applies with full force where, as here, the debtor remains the real economic party in interest since the "scope of this protection is not determined solely by whom a party chose to name in the proceeding, but rather, by who is the party with a real interest in the litigation."  Kaiser Aluminum, 315 B.R. at 659.

**B.    The Debtors' Reorganization Will Be Adversely Impacted if the State Court Proceeding Is Not Stayed**

36.    The Debtors require access to the Title Insurance Proceeds to fund distributions required under the Amended Plan.  (See Amended Plan IV. A. 5.)  The Debtors do not have the resources or the liquidity available to fund cash recoveries on account of the Mechanics' Lien

---

[16]    The Debtors reserve all rights to seek remedies, including actual and punitive damages, on account of First American's violation of the automatic stay.

Claims if such claims are determined to be allowed claims senior to those arising under the Longview Credit Facility.  If the Debtors are denied access to the Title Insurance Proceeds as contemplated by the Amended Plan, the Debtors may be required to further prolong these chapter 11 cases, wait for the ultimate disposition of their arbitration, re-initiate costly claims estimation proceedings with the Contractors, and risk the ultimate liquidation of their business.  Such an outcome would directly and adversely impact the Debtors' entire reorganization.

37.    Moreover, First American's State Court Proceeding exposes the Debtors to an unacceptable risk of collateral estoppel on issues vital to the Debtors' reorganization efforts—separate and apart from the more fundamental issue as to whether proceeds are available under the Title Insurance Policy.  Extension of the automatic stay is warranted where a third-party action might otherwise work a collateral estoppel or issue preclusion on a debtor.  See In re Union Trust Philadelphia, LLC, 460 B.R. 644, 657 (Bankr. E.D. Pa. 2011); see also In re Am. Film Technologies, Inc., 175 B.R. 847, 853-54 (Bankr. D. Del. 1994).

38.    For example, First American has sought to bar coverage under the theory that the Debtors have conceded that Siemens and Kvaerner hold allowed secured claims that prime claims arising under the Longview Credit Agreement.  (See State Court Complaint ¶ 61.)  Such allegations are wholly without merit.  As the Court and all parties in interest are aware, the Debtors have never made any such "concessions" and have, at all relevant times, reserved all rights to dispute the Mechanics' Lien Claims as provided by both the Amended Plan and the Original Plan.  The Debtors also remain engaged in vigorous arbitration with those parties.  But a determination by the California state court that the Debtors have implicitly "allowed" Siemens'

and Kvaerner's claims could fundamentally undermine the Debtors' restructuring efforts in these chapter 11 cases, including by triggering an event of default under the Debtors' DIP facility.[17]

39.     Similarly, First American asserts that it, not the Debtors, holds claims against Siemens, Kvaerner, and Foster Wheeler on account of the Longview Power Facility.  That is, First American contends that the Debtors have been divested of those claims by virtue of First American's alleged subrogation rights under the Title Insurance Policy. (See State Court Complaint ¶ 92.)  A determination by the California state court in First American's favor could then strip these chapter 11 estates of valuable assets in the form of the Debtors' claims (and counterclaims) against Siemens and Kvaerner, see 11 U.S.C. §§ 541(a), 559, and materially disrupt the Debtors' ability to proceed with their pending arbitration against those parties.  In addition, First American has asserted that the Debtors' Amended Plan violates applicable law as a basis to deny coverage.  (Id. ¶ 58.)  Such a finding would, of course, prevent the Debtors from confirming their Amended Plan.  See 11 U.S.C. § 1129(a)(3).

40.     The foregoing is a short list of issues vitally related to these chapter 11 proceedings that First American would have decided by a California state court.  Without question, these issues go to the very heart of the Debtors' reorganization and the function of the bankruptcy process as a whole.  The automatic stay should therefore be enforced to prevent these chapter 11 cases from being undermined by First American's end run on the bankruptcy process.

## II.     Alternatively, the State Court Proceeding Should Be Enjoined Pending this Court's Disposition of the Debtors' Adversary Proceeding Pursuant to Section 105 of the Bankruptcy Code

41.     In the alternative, the Court may enter an injunction staying the State Court Proceeding pursuant to its authority under section 105 of the Bankruptcy Code, even if the

---

[17]     See Senior Secured Superpriority Debtor-in-Possession Credit Agreement § 7.01(q)(xi) (the "DIP Credit Agreement).  The form of DIP Credit Agreement is filed as **Exhibit 1** thereto [Docket No. 504].

automatic stay is held not to apply.  See In re Calpine Corp., 365 B.R. 401, 409 n.20 (S.D.N.Y. 2007).  Section 105 authorizes the Court to stay third party actions against non-debtor parties where necessary for the reorganization process.  Id.  Under this standard, injunctive relief is appropriate where:  (a) there is a likelihood of successful reorganization; (b) there is an imminent irreparable harm to the estate in the absence of an injunction; (c) whether the balance of harms tips in favor of the moving party; and (d) whether the public interest weighs in favor of an injunction.  Calpine, 365 B.R. at 410.  Each of the factors are satisfied here.

**A.      The Debtors Have a High Likelihood of a Successful Reorganization**

42.      The Debtors have resolved practically every major contingency in these chapter 11 cases other than finally resolving the Mechanics' Lien Claims.  The Debtors have secured a $150 million new money commitment from the Backstoppers and the Backstoppers' commitment to equitize more than $1.2 billion in debt.  The Debtors have resolved their outstanding issues with Foster Wheeler and are fully engaged in implementing the necessary necessary repairs to the Longview Power Facility.  The Debtors have also entered into long term supply agreements resolving any contingencies with respect to their coal mining operations.

43.      The Debtors' disposition of the Mechanics' Lien Claims, and the Debtors' Amended Plan solves that issue through the Collateral Agent's assignment of the Title Insurance Proceeds to the Debtors.  And, while confirmation of their Amended Plan also requires that the Debtors obtain the Title Coverage Determination from this Court, the Debtors have every expectation they will prevail on the merits of such determination.  In short, the Debtors are able to proceed with confirmation of the Amended Plan in short order—provided the Debtors are also able to stay the State Court Proceeding as requested herein.

**B.** **There is an Imminent Risk of Irreparable Harm to these Chapter 11 Estates if the State Court Proceeding Is Not Stayed**

44.     The risk of collateral estoppel is sufficient "irreparable harm" to warrant injunctive relief in the form of a stay of third party actions.  See Am. Film Techs., 175 B.R. at 853–54.  As noted above, the State Court Proceeding imposes a material risk of collateral estoppel upon the Debtors.  Not only would the Debtors be obliged to sit as bystanders to a State Court Proceeding that might otherwise strip $825 million of value from these chapter 11 estates, First American's action could also result in the Debtors being found to have, among other things:  (a) stipulated to the validity and priority of Siemens' and Kvaerner's liens and claims filed against these chapter 11 estates;  (b) assigned away their claims (and counterclaims) against Siemens and Kvaerner; and (c) prosecuted their Amended Plan in bad faith.  A finding on any one of these points might be catastrophic to the Debtors' reorganization.  The Debtors should not be required to bear the risk that a California state court might assert control over these chapter 11 cases in this fashion.

**C.** **The Balance of Harms Favors the Debtors Here**

45.     First American would suffer no material harm if the State Court Proceeding was stayed as requested herein.  The Debtors are not seeking to enjoin or delay First American's ability to assert its claims or defenses with respect to the Title Insurance Policy. Contemporaneously herewith, the Debtors have commenced their own declaratory judgment action regarding the scope of coverage available under the Title Insurance Policy. First American, as the named defendant, may assert those same defenses it has otherwise raised in the State Court Proceeding.  Conversely, the Debtors would suffer significant harm if the State Court Proceeding were not enjoined.  The Debtors would be obliged to engage in separate

21

litigation in both California and this Court while also bearing the risk of inconsistent or preclusive judgments entered in a foreign jurisdiction.

      **D.**     **The Public Interest Favors Injunctive Relief**

46.    In chapter 11, the "public interest" applicable to a debtor's request to stay a nominally third-party proceeding means "the promoting of a successful reorganization." <u>Am. Film Techs.</u>, 175 B.R. at 849. Enjoining the State Court Proceeding as requested herein will facilitate that interest. As noted above, the Debtors' obligation to obtain the Title Coverage Determination from this Court is the gating item on the Debtors' ability to finally reorganize and emerge from chapter 11. Absent the relief requested herein, the Debtors' reorganization efforts will be materially impaired, and the Debtors' emergence from chapter 11 could be materially (if not permanently) delayed.

<u>Conclusion</u>

47.    For the foregoing reasons, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **<u>Exhibit A</u>**: (a) enforcing the automatic stay with respect to, or, in the alternative, issuing a preliminary injunction and permanent barring continued prosecution of the State Court Proceeding; and (b) granting related relief.

<u>No Prior Request</u>

48.    No prior motion for the relief requested herein has been made to this or any other court.

<u>Notice</u>

49.    The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Longview Credit Agreement; (d) counsel for the administrative agent under the Longview Credit

22

Agreement; (e) the Collateral Agent; (f) counsel for the Collateral Agent; (g) counsel for the Backstoppers; (h) the United States Environmental Protection Agency; (i) the United States Attorney's Office for the District of Delaware; (j) the Office of the Attorney General for the State of West Virginia; (k) the Internal Revenue Service; (l) First American; (m) counsel to First American; (n) the excess insurers with respect to the Title Insurance Policy; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

KE 31789286

Wilmington, Delaware
Dated:  May 23, 2014

*/s/ Daniel J. DeFranceschi*

Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Marisa A. Terranova (No. 5396)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:        defranceschi@rlf.com
              heath@rlf.com
              shapiro@rlf.com
              terranova@rlf.com

- and -

Richard M. Cieri (admitted *pro hac vice*)
Paul M. Basta, P.C. (admitted *pro hac vice*)
Ray C. Schrock, P.C. (admitted *pro hac vice*)
Eric F. Leon, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        richard.cieri@kirkland.com
              paul.basta@kirkland.com
              ray.schrock@kirkland.com

- and -

Ryan Preston Dahl (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        ryan.dahl@kirkland.com

*Co-Counsel for the*
*Debtors and Debtors in Possession*

24